G. L. CLARK, Appellant, v. CITY OF DES MOINES, Appellee.

No. 43548.

MAY 5, 1936.

REHEARING DENIED DECEMBER 17, 1936.

318

Stipp, Perry, Bannister & Starzinger, for appellant.

Fred T. Van Liew, Chauncey Weaver, C. I. McNutt, and D. William Ash, for appellee.

PARSONS, J.—This is an action brought by G. L. Clark, plaintiff, a taxpayer of the city of Des Moines, Iowa, against the city, to restrain the city from ordering warrants drawn on funds of the city during the fiscal year of 1935 and 1936 in excess of the sum of $832,931, and from paying out of said funds during said fiscal year more than the said sum of $832,931. After a hearing and submission of the matter, the court entered a decree for the defendant, and the plaintiff has appealed to this court.

The city of Des Moines is a city of the first class operating under the commission plan of government. A hearing before the city council was had upon the estimated income other than taxation in the sum of $212,000, and the amount necessary to be raised by taxation was found to be $620,931, which was finally entered by the auditor at $620,529, and the proposed expenditures of the city adopted at the hearing was fixed at $832,-931. In other words, the certificate of incorporation taxes of the city fixed the expenditures for the next fiscal year at $832,931, of which $212,000 were estimated to be from income other than taxation, and $620,931 were to be raised by taxation. This was adopted, after notice and hearing, by the city council on the 11th day of August, 1934.

These proceedings were made necessary by reason of what is known as the local budget law, chapter 24 of the Code (section 368 et seq.). The statute, in section 371, provides for the filing of the estimates in sufficient time in advance of the regular or special meeting with the certifying or levying board, when the tax levies are authorized to be made to permit publication, discussion, and consideration thereof and action thereon as provided in the chapter. The estimates are required by section 372 to be fully itemized. Section 374 requires the amount of the difference between the receipts estimated from all sources other than taxation, and the estimated expenditures for all purposes, to be raised by taxation upon assessable property. Section 375 requires

the filing and hearing with the secretary or clerk of the municipality, the estimates required to be made, at least twenty days before the date fixed by law for certifying the same to the levying board. Section 376 says:

"No levy shall be valid unless and until such notice is published and filed."

Section 377 requires a meeting by the certifying or levying board at the time and place designated in the notice, at which any person who would be subject to the taxation shall be heard in favor of or against the same. Section 378 requires a record of this to be made. Section 379 provides that any board, which has power to levy a tax without the same first being certified to it, shall follow the same procedure for hearings. By section 383 it is provided that certification of the local budgets in duplicate be made to the county auditor not later than the 15th day of August each year, on blanks prescribed by the comptroller. Section 380 reads as follows:

"No greater tax than that so entered upon the record shall be levied or collected for the municipality proposing such tax for the purpose or purposes indicated; and thereafter no greater expenditure of public money shall be made for any specific purpose than the amount estimated and appropriated therefor, except as provided in sections," etc. (Not material here.)

Section 381 provides that no taxation shall be levied by any municipality in excess of the estimates published, except such taxes as are approved by a vote of the people.

Following this procedure, the city council adopted its budget estimates in August, 1934, notice was given, and they were regularly filed before the city council, which is the levying board, as well as certifying board. A resolution to that effect was adopted. The clerk was directed to attach and file a copy of this resolution certified to the state comptroller.

The proceedings of the city council being certified to the state comptroller and filed in his office on the 10th day of July, 1934, a public hearing on exemptions asked was fixed for 10 o'clock at the city hall, at which time citizens and taxpayers of Des Moines were heard for and against exemptions. On July 30, a transcript was filed with the state comptroller setting out a complete record of all the evidence submitted at the hearing, to-

gether with various exhibits, petitions, and briefs which had been filed with the city council.

The state comptroller then made the following ruling:

"I am not approving any exemption whatsoever which may be used to increase, restore or re-establish salaries. I am approving an exemption in the sum of $45,000 covering some of the more important functions of the Consolidated fund, $70,000 for the Fire Maintenance fund, $21,675, for Firemen's pension fund, $18,307 for Policemen's pension fund, $10,000 for the Garbage fund, and $5,000 for the Main Sewer fund, making a total exemption approved amounting to $169,982.

"The city may levy for the Consolidated fund without exemption the sum of $513,794. To this amount may be added $62,137 which the Beatty-Bennett law allows for the benefit of the police department, which makes a total of $575,931 permissible under said law. Adding to this amount the exemption granted, fixes the consolidated levy at $620,931, which is about $5,000 less than was levied in 1933."

The district court filed an opinion prior to entering the decree in this case, and in that said:

"It appears that in August, 1934, estimates of revenue from taxation and from other sources were made by the City of Des Moines. At that time, $620,000 was deemed to be the amount to be raised by taxation, and an estimate of $212,000 from other sources of revenue was made, totaling $832,000." The opinion further said: "The plaintiff challenges the legality of the expenditures made in accordance with the appropriation ordinance of March, 1935, because of this increase of anticipated revenue from $212,000 to $400,000, and seeks to enjoin the city from spending this sum, in excess of the 1934 estimate." Commenting on section 380, the court said: "Section 380, of the Code of 1935 prohibits the city from expending any sum in excess of the amount 'estimated and appropriated.' The funds so appropriated and estimated in March, 1935, are largely available for the use of the city. If the August, 1934, estimate should be regarded as a limitation, then the city faces a shortage of $188,000." And further on in the opinion the court said: "It therefore appears to this court that the City is limited in its expenditures to amounts appropriated in March of each year and is not bound

by the estimate of office receipts made by the city council in the August preceding the adoption of the appropriation ordinance.''

It will be observed that section 380 was not given any force here. An examination of said section shows that no greater tax than entered upon the record shall be levied or collected for the municipality proposing such a tax for the purpose or purposes indicated; and thereafter no greater expenditure of public money shall be made for any specific purpose than the amount estimated and appropriated therefor.

The amount estimated was $832,000. In disregard of the provisions of section 380, which provides that ''no greater expenditure of public money shall be made for any specific purpose than the amount estimated and appropriated therefor,'' the city council in April, 1935, passed an ordinance raising the amount that might be expended $188,000. This is against the statute. The city council raised the amount it estimated in its August estimate at $212,000 to $400,000. If it could be raised a dollar, it could be raised a million dollars. An ordinance was then passed by the city council raising the amount to be expended on the same basis as though instead of the amount of $212,000 being the amount estimated to be received from sources other than taxes, it would be $400,000, and allocated the sums to the various departments so that as warrants were drawn and they came in they would be charged as against the funds for that department so allocated.

This is a clear evasion of the statute; it is absolutely contrary to the terms of the statute. When section 380 says that no tax greater than that so entered upon the record shall be levied, it referred, by ''so,'' to what? To the preceding sections of the statute. This statute then limits not only the taxation that may be levied, but the expenditures of the city of public moneys to the amount as originally would be derived from the estimates of the budget made up in August of 1934, and was clearly without question a violation of the statute.

No one can read this chapter of the Code and the sections therein involved without coming to the conclusion that the legislature in enacting this chapter had in mind not only the limitation of taxation that might be levied, but expenditures that might be made. What is the result of following such

procedure as was followed by the city council in this case? The result is that if there was any shortage in the amount they claim will be collected other than by taxation, in that year, warrants may be drawn up to whatever amount it may be raised to, and the result will be that if there is a shortage, the city or municipality so doing is ordinarily faced with making a bond issue to take up such expenditures as are excessive, or to provide for them in the next year's taxation levy. This was what the legislature was trying to avoid. There can be no excuse for such procedure by the city council.

Perhaps, if necessary, it might be well for the next legislature to look into this and place some sort of a limit upon the estimated amounts which would be received by the city treasury not arising from taxation of property, and if so, in the wisdom of the legislature it should see fit so to do, there might be a limit placed on such amount as might be estimated, and if that amount is limited to the sum which had been collected in the previous fiscal year, and it happened more money was collected in the next year, it wouldn't do the city any harm, but it would have that much to go on, rather than to have more debt to meet and to pay taxes for and interest on the debt. Further, the action indulged in herein is not permissible by law under section 390, constituting an indictable misdemeanor punishable by imprisonment and by a fine. And it might also be very well found that such willful misconduct in office as was indulged in here would authorize the removal from office, by a proper action, of the parties so doing.

The effect of such an action is to subject the property of the people to the necessity of taxing, perhaps not in the fiscal year in which the delinquency occurs, but in the subsequent years, to pay the debt accumulated and the interest thereon. The whole idea of the statute is to protect against these things. To create a debt, where no power to create it exists, if the statute is to be obeyed, is to subject the property in the city to taxation for debts which should never have been contracted. Municipal corporations such as the city of Des Moines are creatures of the legislature. They are subject to the legislative will; they have legally only such power as is given them by the legislature, or necessarily included in the power granted. They have no inherent powers of taxation, except such as are given by the statute.

■■■ The power to tax arises by a legislative act. Municipalities cannot tax except as authorized by the legislature. 26 R. C. L. section 13, p. 27; 61 C. J. p. 81, wherein it is said:

"The taxing power of the state is exclusively a legislative function, and taxes can be imposed only in pursuance of legislative authority, there being no such thing as taxation by implication. Subject to the fundamental or organic limitations on the power of the state, the legislature has plenary power on the matter of taxation, and it alone has the right and discretion to determine all questions of time, method, nature, purpose, and extent in respect of the imposition of taxes, and subjects on which the power may be exercised, and all incidents pertaining to the proceedings from beginning to end; and the exercise of such discretion, within constitutional limitations, is not subject to judicial control."

A municipal corporation can only exercise such power, and in such manner, as the legislature may direct. Merriam v. Moody's Ex'rs, 25 Iowa, 163; Carter v. City of Dubuque, 35 Iowa 416; City of Keokuk v. Scroggs, 39 Iowa, 447; Field v. City of Des Moines, 39 Iowa, 575, 28 Am. Rep. 46; McPherson v. Foster Bros., 43 Iowa, 48, 22 Am. Rep. 215; Logan & Sons v. Pyne, 43 Iowa, 524, 22 Am. Rep. 261; Van Eaton v. Sidney, 211 Iowa, 986, 231 N. W. 475, 71 A. L. R. 820.

For the reasons pointed out herein, the decision of the district court is hereby reversed.—Reversed.

DONEGAN, C. J., and RICHARDS, ALBERT, MITCHELL, HAMILTON, KINTZINGER, STIGER, and ANDERSON, JJ., concur.