[Civ. No. 9306.   Third Dist.   May 2, 1958.]

O'KELLEY-ECCLES COMPANY (a Corporation), Appellant, v. THE STATE OF CALIFORNIA et al., Respondents.

Hanna & Morton and James M. McRoberts for Appellant.

Edmund G. Brown, Attorney General, James E. Sabine and Irving H. Perluss, Assistant Attorneys General, and Edward P. Hollingshead, Deputy Attorney General, for Respondents.

VAN DYKE, P. J.—This is an appeal from a judgment denying recovery of taxes paid under protest. Appellant is a retailer within the meaning of the Sales and Use Tax Law and made retail sales in this state subject to sales taxes. It claimed that by virtue of its methods of doing business a part of its receipts which constituted charges for the delivery of items sold should be excluded from the computation of gross receipts from sales.

Appellant's methods of doing business which are pertinent here may be stated as follows: Appellant manufactures and sells concrete building blocks at "FOB Plant" prices. If delivery is made by appellant to a place designated by the buyer a specific delivery charge is made in addition to the "FOB Plant" price. About half of the blocks sold by appellant are so delivered. Appellant's price schedules set forth prices "FOB Plant" for various sizes and styles of blocks and separately stated set forth the charges for delivery within a radius of 30 miles. Appellant grants discounts from its published "FOB Plant" prices favoring customers such as contractors who buy large quantities, but discounts are not given on that part of the total cost to the customer which constitutes the delivery charge. In paying its sales taxes, appellant deducted from the gross amount received from sales the amounts received for delivery. Respondents reassessed and demanded payment of the tax upon the excluded amounts. Appellant paid under protest.

The trial court made the following findings: That in all instances involved in the action the customers of plaintiff ordered that the concrete blocks be delivered to them at a designated place and that plaintiff delivered the blocks in its own trucks; that plaintiff made a transportation charge to offset the cost of transportation, which charges aggregated $39,610.91 during the period involved; that this amount constituted the measure of the sales taxes sued for; that plaintiff failed to show that in entering into any of the transactions involved any express agreement was made concerning the time and place where title to the blocks was to pass; that in order to inform its customers of the prices of the blocks and the delivery charges, plaintiff prepared price lists which specified the sizes and styles of the blocks listed and stated an ''FOB Plant'' price and the charge for ''Delivery 30 Miles''; that a total of those two prices was applicable to all instances where plaintiff delivered blocks; that plaintiff failed to establish that the terms ''FOB Plant'' and ''Delivery 30 Miles'' set forth in its price list designated anything other than a statement of prices and failed to establish that such terms were stated separately for any reason other than to differentiate between the plant price and the delivered price, so that customers would know the plant price where they arranged for delivery themselves, and would understand that plaintiff allowed a contractor's discount only upon the plant price and so that the amount of the discount could easily be determined; that plaintiff further failed to establish that the term ''FOB Plant'' in plaintiff's price lists had any reference to the time and place of the passage of title; that the term ''FOB Plant'' was merely a pricing term and had no other significance; that, in dealing with its customers plaintiff failed to show that it communicated to them any intention it may have had that title to the goods sold and delivered by it was to pass other than at the time the blocks were received by the buyer or were delivered at the place designated by the buyer; that buyers who saw plaintiff's price lists believed that said price lists indicated only that plaintiff maintained a plant price and a delivered price; that plaintiff failed to establish that custom or usage of the trade supports its theory that title passed at some time prior to the delivery of the goods by plaintiff's trucks.

Conceding, as it must, that these findings support the judgment, appellant attacks the findings upon the ground that the evidence does not support them.

Section 6051 of the Revenue and Taxation Code imposes a tax upon retailers for the privilege of selling tangible personal property at retail. The section measures the tax by the gross receipts of the retailer from sales at retail.

Section 6012 defines gross receipts and provides for certain exclusions. The term "gross receipts" means the total amount of the sale price of the retail sales of retailers without deduction for the cost of the property sold or of the materials used, labor or service cost, interest paid, losses or any other expense and without deduction for the cost of transportation of the property *prior to its sale to the purchaser*. The total amount of the sale includes any services that are a part of the sale and all receipts, cash, credits and property of any kind. "Gross receipts" do not include "transportation charges" separately stated if the transportation occurs *after the sale of the property is made* to the purchaser. It was recognized by the parties hereto that the decision in this case must turn upon the question of when title passed in those instances of sale involved in the action. Appellant contends that the evidence conclusively proved that its only receipts from sales were made up from its FOB Plant prices; that its receipts from transportation formed no part of its sales receipts and were charges for transportation made after title had passed to the buyer, and that title passed at the moment the blocks were physically placed on board its trucks at the plant.

Appellant sought by testimony of its president and of some of its employees to show that title passed when the blocks were placed on its trucks for delivery to buyers by showing its general sales procedures. Thus its office manager and expediter, a Miss Frederickson, testified as follows: "A. I take the order, and if they want a price quoted I quote them a price f.o.b. plant. Then I ask them if they want the order picked up at our plant or delivered. If they want it delivered, then I quote them a delivered price. Q. Do you break down the price, so much for your f.o.b. plant and so much for delivery and total? A. Absolutely, yes. Q. Is that a standard procedure of O'Kelley-Eccles? A. It always has been, yes. Our price list shows the unit price f.o.b. plant and in addition to that the delivery charge separate." Appellant sent its price sheets to those customers who bought in quantity and where customers came to the plant. The price sheets displayed were explained. Said Mr. Chaffee, the president of appellant: "One thing we have

to explain carefully is that, because we do quote a plant price plus delivery, their discounts, if a discount is applicable, is only applicable on the plant price, not on the delivery. We always take great pains to explain that. . . . Q. What about an explanation of the difference between 'FOB Plant' price and 'Delivery' price? A. We tell them that the price is f.o.b. the plant and that we will be very happy if they would pick them up. If they want us to deliver them for them we will do that and it will cost them so much money.'' There was much more along the same lines, but one significant feature of the testimony is that no witness testified there was ever any express stipulation between the parties to a sale as to when and where title should pass. A witness for respondent, who was a contractor and a quantity buyer, testified that he generally ordered over the telephone, that he had the appellant's price sheets before him; that he told them the kind and the quantity of blocks and where he wanted them delivered. He said also that nothing was ever said to him about where title should pass and that the matter never crossed his mind.

The cardinal factor, according to the Uniform Sales Act, upon which the passing of title between a seller and a buyer depends, is the intention of the parties. The parties to a contract of sale may expressly stipulate as to when title shall pass and such a provision is ordinarily given full effect as between the parties, but since the parties do not always stipulate in such respect the courts have adopted, and the Uniform Sales Act has provided, certain rules for determining the intention of the parties. (46 Am.Jur., Sales, § 413.) We think the court was fully justified, under the evidence, in concluding that the contract between the parties in fact cast upon the appellant an obligation to deliver the goods at the point designated by the customer, and that, therefore, the question of the intent of the parties as to the time and place where title should pass was governed by section 1739 of the Civil Code, rule 5, reading as follows:

''If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, . . . the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon.''

Appellant contends that the court erred in granting respondent's motions to strike certain testimony offered by appellant. Appellant does not so much attack the rulings of the court on the merits as it does upon a claim that the

respondent, by its conduct during the trial, waived its right to move to strike. ■ But a trial court may exclude or strike out inadmissible evidence, even though it is not objected to by a party and even though no motion is made to strike the same. (*People* v. *Wallace,* 89 Cal. 158 [26 P. 650] ; *Kimic* v. *San Jose etc. Ry. Co.,* 156 Cal. 379 [104 P. 986] ; *Schubkegel* v. *Dunn,* 31 Cal.App.2d 312 [87 P.2d 875] ; 24 Cal.Jur. pp. 775, 781.) ■ More specifically, appellant points to the following instances as showing the error of the trial court. A witness testified concerning his understanding as to the meaning of the term "FOB". He said: "We have always, ever since I was in grammar school I have understood that stands for 'free on board'. . . . We mean free on board truck. We consider that those blocks are our property until we set them on a truck." Clearly, the witness's statement as to what appellant considered concerning the passage of title, not communicated to customers, was testimony that should have been stricken or excluded upon objection or on the court's own motion. But appellant says that the witness's statement "We mean free on board truck" ought to have been left in. The ruling of the court was made after the cause had been submitted for decision and in the absence of proof that appellant's understanding was in any wise communicated, it was proper for the court to strike the testimony. Again, the court struck testimony of appellant's president that the transportation charge was in addition to the sales price. Here a specific objection was made that the answer involved a conclusion of the witness upon the very issue of law before the court, that is, what the sales price was. The ruling of the court was proper. We think it unnecessary to go into further detail upon the contentions as to the rulings on evidence. Speaking generally, the court struck out portions of the testimony of witnesses wherein the witness was testifying to the uncommunicated intention of the appellant in respect of sales made by it and touching the issue of passage of title.

■ Appellant contends that respondent was estopped from collecting the taxes in dispute here by reason of certain conduct of respondent's agents responsible for the administration of the Motor Vehicle Transportation License Tax Act. Appellant's president testified that in adopting a policy for sales it was decided to sell FOB plant and then charge a fee for delivering to those who wanted the blocks delivered;

that the local office of the Board of Equalization was consulted about the plan and that after consultation, and acting on the advice of representatives of the board, appellant began and continued publication of FOB Plant prices plus delivery charges; that in order to be "in compliance" a license was obtained from the Board of Equalization for appellant's trucks and appellant began paying and has ever since paid a transportation tax. Assuming that the foregoing is true and that appellant has paid 3 per cent upon the gross receipts for hauling, it does not follow that estoppel was made out for the following reasons: Appellant did not plead estoppel and it is the rule that failure to plead an estoppel constitutes a waiver. (*Judelson* v. *American Metal Bearing Co.*, 89 Cal.App.2d 256, 266 [200 P.2d 836] ; *Fleishbein* v. *Western Auto Supply Agency*, 19 Cal.App.2d 424 [65 P.2d 928].) Further, plaintiff has elected to exercise two franchises, each requiring the payment of a tax based on gross receipts from the exercise thereof and neither the Motor Vehicle Transportation License Tax Act nor the Sales and Use Tax Act provides that the payment of a tax under one statute shall constitute an exemption from the liability to pay under the other.

No other points require discussion.

The judgment appealed from is affirmed.

Peek, J., and Schottky, J., concurred.