CLARION READY MIXED CONCRETE COMPANY, a corporation, appellee, v. IOWA STATE TAX COMMISSION, appellant.

No. 50232.

(Reported in 107 N.W.2d 553)

FEBRUARY 8, 1961.

Norman A. Erbe, Attorney General, and Gary S. Gill, Special Assistant Attorney General, for appellant.

Archerd, Birdsall & Draheim, of Clarion, for appellee.

LARSON, J.—This is an appeal from a district court judgment reversing the action of the Iowa State Tax Commission confirming an additional sales tax assessment against plaintiff on transportation charges made and collected by it for delivery of ready mixed concrete to its customers. The dispute revolves around the sales arrangements, the sales tax provisions, and Tax Commission rules relating thereto. The trial court, in effect, held that under the record separate sales of ready mixed concrete and of transportation services were disclosed, and that under section 422.45(2) the transportation services were exempt from the state sales tax. We agree with the trial court.

The case was submitted upon a stipulation and the testimony of Mr. Louis C. Toft, president and general manager of plaintiff-corporation. From the stipulation it appears plaintiff was engaged in the retail sale of ready mixed concrete during the period involved from April 1, 1955, to March 31, 1959. Its plant is situated on the railway right of way at Clarion, Iowa. There, mixer trucks owned by the company are loaded with necessary materials kept on hand to make concrete. The mixed concrete is then transported to the customer in the trucks. Concrete is furnished to customers in both the city and county. Ready mixed concrete is offered for sale at a certain price per yard "and a separate charge [is made] for the transportation of said concrete at a certain price per yard-mile." Transportation charges therefor varied depending upon the number of miles of travel required. These charges were kept in separate books and appear as separate entries on the consumer's invoice. "On each sale involved in this controversy the delivery charges made by the plaintiff were based upon a cubic-yard-mile basis computed as follows: $.70 per cubic yard for the first two miles or fraction thereof and $.12 per yard-mile beyond the two-mile radius."

The plaintiff charged, collected and remitted the sales tax required on the ready mixed concrete, but did not charge, collect

or remit any sales tax on the separate transportation charge. It appears in the stipulation *"that at no time during this period did the plaintiff quote any ready mixed concrete at a delivered price or make any sales at a price F.O.B. his plant and subsequently furnish transportation service without additional charge."* (Emphasis supplied.) Pursuant to an audit by defendant August 13, 1959, the additional assessment covering the transportation charges was made in the sum of $453.66, and a penalty of $157.60 levied against plaintiff. It was agreed that if these charges were subject to a sales tax, the amount of the assessment and penalty is correct.

Mr. Toft testified the special type mixer trucks are driven under a loader at the plant, and a prepared batch of measured material is dumped into a drum mounted on the truck. This drum is driven by a separate motor and the batch immediately mixed at the plant, usually in two-yard batches. After the ingredients of sand, fine material, rock, cement and water are mixed for some "five, six minutes" at high speed, the driver pulls out to make the delivery. The drum is kept revolving at slow speed during the trip "to keep it stirred up", and especially to avoid getting "flat spots" on the "rollers" when the load bounces up and down during transportation. Nothing is done to the mixed concrete in transit or on delivery except for a little added water if the mix is too dry to suit the customer. The price of the ready mix during the period involved varied between $13 and $14 per yard. The basis of the transportation charges or service was the company's expenses of operating the trucks and depreciation. Mr. Toft further testified that when a person called to ask "How much is concrete?" his answer would be "$13.00 a yard plus delivery." When they want to know as to the cost of delivery, he asks "How far out do you live? For ten miles it is $.70 for the first two miles, and then it is $.12 a yard-mile for the next eight miles." It is true that by adding the cost of the concrete and the transportation cost one can arrive at a so-called "delivery price", which defendant contends is not exempt under the Iowa sales tax law and its rules. It maintains no sale is in fact consummated or intended until the ready mixed concrete is delivered to the

customer, and that until such time delivery costs are but a part of the expense to the retailer in making a sale of tangible personal property and, as the total charge is a part of the gross receipts, it is taxable under section 422.43, 1958 Code of Iowa, and not exempt under section 422.45(2) as claimed by plaintiff.

Section 422.43 provides: "There is hereby imposed, beginning on the first day of April, 1937, a tax of two percent upon the *gross receipts* from all sales of tangible personal property, consisting of goods, wares, or merchandise, *except as otherwise provided in this division,* sold at retail in the state to consumers or users; * * *." (Emphasis supplied.)

Section 422.45(2) provides: "There are hereby specifically exempted from the provisions of this division and from the computation of the amount of tax imposed by it, the following: * * *

"2. The gross receipts from the sales, furnishing or service of transportation service."

The record amply supports the trial court's finding that the ready mixed concrete was sold and charged as an item of tangible personal property, and that transportation service in the form of delivery of that property was also sold and separately charged to the customer. Thus the only real issue was the meaning of section 422.45(2) of the 1958 Code which specifically exempted from sales tax in Iowa the gross receipts from the sale of transportation services. The learned trial court found no ambiguity in the statute, and neither do we. The ambiguity, if any, involved in this dispute arises from an attempt by the Tax Commission to interpret that section in Rule No. 41, 1958 Iowa Departmental Rules, page 458.

Defendant explains that Rule No. 41 sets out a number of examples where transportation services are involved and indicates the tax consequences to a retailer. Under the first two paragraphs plaintiff appears to be exempt, but under the third paragraph, if the Tax Commission's contention is correct, plaintiff must pay tax upon all gross sales of transportation services rendered prior to the actual delivery of possession or, as it contends, the actual transfer of title to the personal property involved.

The first paragraph provides: "Where a seller supplies tangible personal property from stock, the transportation charges for shipment or delivery from the seller to the consumer or user, shall become part of the purchase price on which sales tax is computed, except and unless such delivery or transportation charges are billed separately."

The second paragraph provides: "Where a retailer furnishes transportation in his own vehicle the charge for transportation shall be deducted from the gross receipts on which sales tax is computed, provided the transportation is charged separately and the price charged for merchandise at retailer's place of business, exclusive of transportation, is the same price charged a buyer furnishing his own transportation. The transportation charge shall be separated both in the retailer's books and on the invoice to the consumer."

It is readily seen from the evidence in this case that plaintiff's method of conducting its business complies with those requirements of the Tax Commission.

However, in the third paragraph it is stated: "Where the goods, wares or merchandise sold *are quoted by the seller at a delivered price,* no cost of transportation shall be deducted from the gross receipts on which retail sales tax is computed regardless of the manner in which transportation is made and notwithstanding the fact that the purchaser pays the cost of transportation and receives credit therefor." (Emphasis supplied.)

Without attempting to interpret or construe this paragraph, it is clear that defendant takes the position that when tangible personal property is to be sold and in the usual course of trade will be delivered by the seller, the gross receipts of that sale include the delivery charge or transportation service regardless of any separate quote or charge made for the latter service.

The commission relies on our pronouncements in City of Ames v. State Tax Commission, 246 Iowa 1016, 71 N.W.2d 15, as authority for that position. However, in that case no separate charge was made for transportation service, but the pipe purchased was sold F.O.B. Ames and the delivery or transportation charge was included in the quoted selling price. We merely pointed out therein that since the transaction between the parties

did not involve separate sales or charges for the transportation service, the tax must be paid upon the entire purchase price; that by separating the freight charges and paying them by a separate check, it would not escape the tax.

Defendant further contends that, until the sale is complete and title passes to the buyer, transportation costs cannot be a separate service exempt under the Iowa law. The authorities cited for this proposition are foreign, and an examination of them indicates different statutory provisions as to when sales taxes are collectible. We shall mention only one. In O'Kelley-Eccles Co. v. State, 160 Cal. App.2d 60, 324 P.2d 683, the court held that where cement blocks were sold at the plant or were quoted at a delivered price the sale did not take place until delivery, and that the gross receipts including delivery costs were taxable. The California law in substance provides that "gross receipts" are taxable and that "gross receipts" do not include "transportation charges" separately stated *if* the transportation occurs *after* the sale. Thus it was reasoned transportation costs incurred prior to the actual sale to the buyer were included in taxable gross receipts. Reference is then made to the uniform sales tax law to determine the time when the sale is consummated. Obviously our sales tax provisions are not similar. Section 422.45(2) in our law does not require a completed sale prior to transportation service.

Nevertheless, the commission argues that any transportation charges incurred prior to the delivery of possession of the ready mixed concrete are part of the gross receipts from the sale and are taxable, that until the concrete is delivered no sale has been made. The argument is ingenious but not very persuasive when we consider the real legal issue involved herein, i.e., what is the meaning of section 422.45(2), 1958 Code of Iowa? There is no ambiguity in its provisions. It simply exempts from the State sales tax the gross receipts from sales of transportation services. When they are separable from the tangible personal property being sold and, by agreement of the parties, are charged as separate items of sale, there can be little question but that by the specific language of the statute they are exempt from the Iowa sales tax. In that respect the statutory exemption provision is quite clear.

█ I. We have continually said that when statutes are clear and unambiguous they are not subject to interpretation by the courts. Cowman v. Hansen, 250 Iowa 358, 362, 92 N.W.2d 682, and citations; Mallory v. Jurgena, 250 Iowa 16, 21, 92 N.W.2d 387, and citations; 82 C. J. S., Statutes, section 312; 50 Am. Jur., Statutes, section 219. The only legitimate purpose of statutory construction is to ascertain the legislative intent, and when the language is so clear, certain and free from ambiguity and obscurity that its meaning is evident from a mere reading, then there is no need for construction. Jones v. Thompson, 240 Iowa 1024, 1036, 38 N.W.2d 672, 678; Cowman v. Hansen, supra.

It appears to us by its administrative action in establishing Rule No. 41 the commission has not accomplished its purpose of clarity, but on the other hand has perhaps generated uncertainty not present in the statute itself.

█ II. Of course, if a real question on construction does arise, the interpretation of the statute rests solely with the courts. Clark v. City of Des Moines, 222 Iowa 317, 267 N.W. 97. We held therein the taxing power of the State is exclusively a legislative function, and that taxes can be imposed only in pursuance of legislative authority. It is true that courts give weight to administrative interpretation of statutes where the meaning admits of doubt and the rule is of long standing. Northwestern States Portland Cement Co. v. Board of Review, 244 Iowa 720, 733, 58 N.W.2d 15, 23, and citations. However, it is equally clear that the plain provisions of the statutes cannot be altered by an administrative rule no matter how long it has existed or has been exercised. City of Mason City v. Zerble, 250 Iowa 102, 109, 93 N.W.2d 94, and citations; City of Ames v. State Tax Commission, supra, 246 Iowa 1016, 1022, 71 N.W.2d 15, 19. If Rule No. 41 therefore imposes the tax herein, as the commission contends, and it is not consistent with the statutory provisions in section 422.45(2), then it is ineffective. As we said in the Ames case, supra, "The function of the commission is an administrative one, and it may enact reasonable rules and regulations necessary in carrying out the legislative enactments.

But it may not make law, or by rule change the legal meaning of the common law or the statutes."

III. It is true exemption statutes must be strictly construed, and doubts must be resolved against the exemption. Cornell College v. Board of Review, 248 Iowa 388, 390, 81 N.W.2d 25, but when the statutory provisions are as clear and conclusive as they are here, we think neither the courts nor the commission may alter the meaning. Mallory v. Jurgena and Cowman v. Hansen, both supra. Gross receipts from the sale of transportation services are specifically exempt under the law, and nowhere is any mention made as to the effect of title or ownership of the tangible property involved, or as to its effect on sale of such transportation service. We cannot read such a restriction into the exemption section.

IV. The commission correctly contends that taxation is the rule and that a taxpayer claiming to come within the exemption is held to strict proof. In re Claim for Military Service Tax Exemption, 244 Iowa 974, 977, 58 N.W.2d 831; Lamb v. Kroeger, 233 Iowa 730, 733, 8 N.W.2d 405; Readlyn Hospital v. Hoth, 223 Iowa 341, 272 N.W. 90. However, it seems clear under the record before us that plaintiff has carried its burden and that it did separately sell, charge and bill transportation services to the customer. The product for sale at retail, or to be sold to customers, was ready mixed concrete. It was, in fact, salable property produced before the transportation service began and the customer was never quoted a delivered price. The plaintiff at no time delivered its product as a part of the sale of tangible personal property, and its sale was always F.O.B. the plant. The contract for transportation service was separate and was so understood and intended by the buyer and the seller. Such intent was amply manifest and we think most persuasive.

V. While it may be desirable to exempt gross profits from the sale of transportation services when related to the retail sales of tangible personal property only when it occurs after the sale of the property and is separately contracted for, that clearly is not the requirement of the Iowa law. As pointed out by the able trial court, such conditions may not be added to the

statute by inference or implication either by the Tax Commission or the courts. If further restrictions are to be imposed upon the right of exemption for transportation services separately charged and billed to the consumer or buyer, then it is the legislature's place to say so, not the commission or the courts.

The order of the district court setting aside and annulling the additional tax assessment and penalty upon gross receipts from the sale of transportation service and taxing costs to the Iowa State Tax Commission is affirmed.—Affirmed.

All JUSTICES concur except BLISS, J., who takes no part.