225 N.W.2d 571 (1974)
In the Matter of the SALES AND USE TAX DETERMINATION made By the STATE TAX COMMISSIONER against Ace Mud Service, Inc.
ACE MUD SERVICE, INC., Protestant and Appellee,
v.
STATE TAX COMMISSIONER, Respondent and Appellant.
In the Matter of the SALES AND USE TAX DETERMINATION made By the STATE TAX COMMISSIONER against Baroid Division, National Lead Company.
BAROID DIVISION, NATIONAL LEAD CO., Protestant and Appellee,
v.
STATE TAX COMMISSIONER, Respondent and Appellant.
Civ. Nos. 9027 and 9028.
Supreme Court of North Dakota.
December 31, 1974.
Rehearings Denied January 30, 1975.
*572 *573 Rolfstad, Winkjer, Suess, McKennett & Kaiser, Williston, for protestants and appellees.
Robert W. Wirtz, Sp. Asst. Atty. Gen., State Tax Department, Bismarck, for respondent and appellant.
VOGEL, Judge.
The question before us is whether the district court was correct in reversing a decision of the State Tax Commissioner which assessed additional sales tax against the appellees on moneys received by them for transportation of goods sold by them.
The appellees are in the business of selling oil well drilling muds and supplies to the oil well drilling industry in the State of North Dakota. They made sales within the State of North Dakota of various items of tangible personal property to customers located within the State. The period of time involved is April 1, 1962, to March 31, 1968, as to appellee Baroid Division, National Lead Company, and April 1, 1965, to June 30, 1968, as to appellee Ace Mud Service, Inc. The appellees' sales invoices for items sold to their customers during these periods of time included a price charged for the items sold, and on these prices North Dakota sales or use tax was computed and paid to the State. Many of the sales invoices included a separate amount stated for transporting the items from the North Dakota warehouses of the appellees to the location in the oil fields designated by the customer. Upon these amounts the appellees did not compute or pay a sales or use tax. The Tax Commissioner assessed additional taxes on the latter sums, the appellees protested the assessments, hearings were held, and rulings were made against the appellees in administrative proceedings. Subsequently, they appealed to the district court (the appeals being consolidated for trial pursuant to stipulation), which reversed the administrative determination and held that the sums collected for transportation were not subject to sales or use tax.[1]
*574 The statute upon which the district court relied, and upon which the appellees rely here, is Section 57-39.2-04, N.D.C.C., the pertinent portions of which follow:
"There are specifically exempted from the provisions of this chapter and from computation of the amount of tax imposed by it the following:
. . . . .
"2. Gross receipts from the sales, furnishing or service of transportation service."
Based on a general authority to make regulations [Sec. 28-32-02, N.D.C.C.] and an explicit authority pursuant to Section 57-39.2-19, N.D.C.C., the Tax Commissioner promulgated Rule 36, which was in effect the entire period of time here in question and which remains in effect (with subsequent additions not pertinent here), and also promulgated former Rule 82, which was in effect until June 1, 1968, and Rule 81, in effect on June 1, 1968, and still in effect. Pertinent portions of those rules follow:
Rule No. 36
"The receipts from the sales, furnishing of service or transportation are exempt from the sales tax. This exemption applies to the receipts derived from the business of transporting passengers, goods and merchandise only and does not mean that freight and delivery charges are not to be included in the cost of goods sold. (See Rule No. 82.)" [Emphasis supplied.]
Rule No. 81
"1. Freight, delivery, or other transportation charges are subject to the sales and use tax as part of the retail price charged for the property sold if title to the property being transported passes to the buyer at the destination point. Where the title to the property being sold and transported passes to the buyer at the point of origin, the freight or other transportation charges are not a part of the retail price and are not subject to the sales or use tax. It is immaterial whether it is the retail seller or the buyer who actually pays for any charges made for transportation, whether the charges were actually paid by one for the other, or whether a credit or allowance is made or given for any such charges. [Underlining in original.]
"2. Charges for transportation to the place where title is to pass from the retail seller to the buyer are to be included in the base upon which sales tax is charged but charges for transportation after title passes are not included.
. . . . .
"4. If the retail sale is made F.O.B. destination, the title to the merchandise would not pass from the retail seller to the buyer until the merchandise has reached the point of destination. The retail seller, in such a situation, would be required to include the freight charges in the base upon which the sales tax is charged. [Underlining in original.]
"6. When a retailer, by means of delivery facilities operated by him, delivers tangible personal property to a place specified by the buyer or if the property is sold at a delivered price, title will not be considered as passing to the buyer until the goods reach the place specified unless *575 there is clear and convincing evidence that both retailer and buyer intended the title should pass at some other place.
"7. In determining when title passes, the cardinal rule is that the time and place at which title passes depend on the intent of the parties, to be determined by the terms of the contract, the conduct of the parties, usages of the trade, and the individual circumstances of each case.
. . . . .
"9. If a contract to sell requires the retail seller to deliver the merchandise to the buyer or deliver it to a particular place, the title does not pass and the retail sale does not occur until the merchandise has been delivered to the buyer or has reached the place agreed upon.
"10. Whenever it is customary for the retail seller to deliver merchandise to the buyer, it is presumed that the title passes at the time of delivery.
"11. Unless a contrary intent appears, delivery to the buyer will be considered prima facie evidence of an intention to pass title at the time delivery is made and the sale will be regarded as having occurred then.
. . . . .
Rule No.82
(In effect until June 1, 1968)
"Where the tangible personal property sold is quoted by the seller at a delivered price, no charges for transportation shall be deducted from the gross receipts upon which retail sales tax is computed regardless of the manner in which the transportation or delivery is made and notwithstanding the fact that the purchaser pays the cost of transportation and receives credit therefor.
. . . . .
"Where tangible personal property is sold f. o. b. the source of supply, charges for transportation or delivery to the purchaser do not become a part of the selling price, providing such service is not rendered by the seller, and the charges are paid by the consumer or user, or are paid by the seller and are billed separately from the charge for the property sold. However, when the transportation or delivery service is rendered by the seller or someone hired by him and an additional charge made for such service, even if billed separately from the charge for the property sold, the sales tax must be computed upon the entire cost to the consumer or user."
Although Rules 81 and 82 are quite dissimilar, the parties seem to have treated them as if they are identical for the purposes of this lawsuit. In making his rulings, the Tax Commissioner relied rather rigorously upon the language of the rules, while the district court, as a basis for reversal of the ruling of the Tax Commissioner, held that the exemption statute governed and the rules did not apply and were inconsistent with and in conflict with that statute.
The Tax Commissioner based his ruling in large part upon a determination as to when title passed between the appellees and their customers, and ruled that the record was silent as to the intention of the parties as to time and place of passage of title, and therefore the appellees had not shown that the amounts charged for delivery of the goods sold were not subject to sales and use tax. The trial court, on the other hand, found that the evidence showed that the taxpayers and their customers had established a course of dealing, as evidenced by an invoice received in evidence pursuant to a stipulation in district court and testimony of Tax Department accountants, whereby the sales were made at the warehouses of the taxpayers, and the taxpayers and their customers negotiated separately for transportation of the tangible personal property *576 from the taxpayers' warehouses to the oil fields.
We thus are faced with different findings of fact and conclusions of law as between the administrative agency and the trial court.
Both this court and the trial court are required to sustain the administrative agency in matters of fact if its findings are based upon substantial evidence in light of the entire record. O'Brien v. North Dakota Workmen's Compensation Bureau, 222 N.W.2d 379 (N.D.1974). Questions of law are fully reviewable. O'Brien v. North Dakota Workmen's Compensation Bureau, supra.
We agree with appellees that the Tax Commissioner is not aided by the last sentence of Rule 36, supra. That sentence does not mean, as the Tax Commissioner states, that retailers of goods cannot make or arrange for delivery of goods without charging sales tax on the delivery charges. The term "cost of goods sold" is an accounting term, a term of art with a specific meaning. It is a total of all the costs of a retailer incurred in bringing the goods into a place and condition ready to be sold. It therefore includes the cost of freight in to the retailer, but not freight out from the retailer.
Of course, if the retailer quotes a delivered price to the customer, then that delivered price becomes the retail sales price, and tax is to be computed upon it.
The basic question of statutory interpretation before us relates to the treatment of delivery charges ("freight out") where those charges are not included in the quoted price and are assessed separately and stated separately on invoices, and where the customer has the option of picking up the goods at the retail place of business at the quoted price for the goods or taking delivery at some other point and paying the retail price plus a charge for delivery.
The Tax Commissioner apparently believes that the statutory exemption of "gross receipts from the sales, furnishing or service of transportation service" does not apply to such circumstances, while the appellees insist that it does.
We hold that the statutory exemption is not restricted to those who deal primarily in freight and passenger service, but is applicable to retailers of goods who incidentally (but separately) provide or arrange for transportation services. If the Legislature had intended to limit the exemption to transportation companies, we believe it could readily have done so in appropriate terms.
The next question before us is whether the evidence in this case is sufficient to sustain the exemption as to the appellees before us. The evidence, while scanty, was deemed sufficient by the district court to establish the exemption.
The evidence consists of one exhibit, stipulated to be a "typical invoice," and the testimony of employees of the Tax Department as to their findings.
The "typical invoice" shows a list of items and the amount charged for each, followed by an item "N.D. Use Tax" based on a total of the charges for the individual items, to which is added a final item for "trucking." Thus the use tax is computed upon the total charges for the items, and not upon the charge for trucking. The stipulation further indicates that the language of the invoice "shipped via No. 18" refers to shipment by Truck No. 18, owned and operated by Ace Mud Service Inc., and that the words on the invoice "Well Name & No. Roharehaber # 1" refers to an oil well to which delivery of the goods was made.
The testimony at the administrative hearing to which appellees point as sustaining their position that the sales were made at their respective places of business and the trucking was separately negotiated and separately billed includes the following:
"MR. SUESS [attorney for appellees]: Let me ask you this question. Did you *577 run across any invoices on which there was no charge made for transportation or trucking?
"MR. ALDINGER [Tax Department employee]: Yes.
"MR. SUESS: In other words, this would imply then that whoever purchased these items picked them up himself from the seller?
"MR. ALDINGER: The purchaser picked them up from who?
"MR. SUESS: From the seller himself. He wasn't billed any transportation or trucking charge.
"MR. JAKES [hearing officer]: By seller, you mean Ace Mud.
"MR. SUESS: I mean Ace Mud, yes.
"MR. ALDINGER: Yes.
"MR. SUESS: In other words, when you said that he either hired someboy [sic] or he charged and hauled them out and made a charge, this was not really an accurate statement. There were times when customers would pick up their supplies directly from the seller, Ace Mud, and no trucking services, no transportation charges were even involved, isn't that correct?
"MR. ALDINGER: True."
Appellees also point to the following testimony:
"MR. MAICHEL [attorney for Tax Commissioner]: In other words, correct me if I am wrong, the company sells mud, do they? This is a drilling mud?
"MR. ALDINGER: Drilling mud.
"MR. MAICHEL: They would sell this mud at their outlet in the state of North Dakota? They do have an outlet in the state, do they?
"MR. ALDINGER: At Williston.
"MR. MAICHEL: At Williston, North Dakota? The sale was made at Williston, North Dakota and the company, as a result of that sale, would deliver the mud to the customer at some location other than at Williston, North Dakota, is that right?
"MR. ALDINGER: Right.
"MR. MAICHEL: And for this service it would make a separate charge which you term a freight charge?
"MR. ALDINGER: Right.
"MR. MAICHEL: Or transportation charge? How were these billed, do you recall?
"MR. ALDINGER: Now the invoices would show so many sacks or so much mud at a certain dollar amount and then the sales tax collected and the freight were additional charges on the invoice.
"MR. MAICHEL: So the selling price of the mud constituted the sales tax base without freight added thereto?
"MR. ALDINGER: Correct.
"MR. MAICHEL: So that the company in all cases collected tax on the selling price of the mud but did not collect tax on the freight charges which it charged the customer. Do you know, Mr. Aldinger, how the mud was delivered by the company?
"MR. ALDINGER: The mud was delivered either in the company's own vehicles or was delivered by someone hired by the taxpayer.
"MR. JAKES: Excuse me, by taxpayer and company you mean the same concern, don't you?
"MR. ALDINGER: Yes.
"MR. MAICHEL: By the seller.
"MR. ALDINGER: By the seller.
"MR. MAICHEL: The person that you audited.
"MR. ALDINGER: Right.
"MR. MAICHEL: So their method of delivery then was either delivery in their own vehicles or the company hired an independent concern to transport the mud to the customers?
"MR. ALDINGER: Yes.
"MR. MAICHEL: And for this the company paid the transportation company and made a separate charge on the sales ticket to the customer?

*578 "MR. ALDINGER: Yes.
"MR. MAICHEL: And this separate charge is not included in the sales tax base for sales tax computation?
"MR. ALDINGER: Correct."
The trial court held that the evidence established that the taxpayers and their customers "separately negotiated for transportation of the tangible personal property from taxpayer's warehouse to the oil field."
This is a finding of fact which we are obligated to uphold unless it is "clearly erroneous." Rule 52(a), N.D.R.Civ.P. We hold that it is not clearly erroneous.
It follows from this finding, we believe, that title to the goods in question passed at the delivery point, the place of business of the taxpayers. The fact is more pertinent under the new Rule 81 than it was under former Rule 82, but under either rule the taxpayers are entitled to prevail in this case by reason of the finding that the sale was made at the warehouse of the taxpayer and that there were separate negotiations for transportation to the oil field.
The parties have called to our attention a number of cases from other jurisdictions. Such cases are more or less pertinent, depending upon the similarity of the language of their statutes to ours or the lack of similarity. The two cases most discussed are those entitled O'Kelley-Eccles Co. v. State of California, 160 Cal.App.2d 60, 324 P.2d 683 (1958), and Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 107 N.W.2d 553 (1961). Of the two, the Iowa case is the more comparable to both the facts of the dispute before us and the North Dakota statute. We believe it correctly distinguishes the California case in the following language:
". . . the [California] court held that where cement blocks were sold at the plant or were quoted at a delivered price the sale did not take place until delivery, and that the gross receipts including delivery costs were taxable. The California law in substance provides that `gross receipts' are taxable and that `gross receipts' do not include `transportation charges' separately stated if the transportation occurs after the sale. Thus it was reasoned transportation costs incurred prior to the actual sale to the buyer were included in taxable gross receipts. Reference is then made to the uniform sales tax law to determine the time when the sale is consummated. Obviously our sales tax provisions are not similar. Section 422.45, subd. 2 [Iowa Code Ann.], in our law does not require a completed sale prior to transportation service." [Emphasis in original.] 107 N.W.2d 553, at 557.
The Iowa case involved sales of ready-mixed concrete, the price of which was quoted at the plant with an additional charge per mile for delivery in the trucks of the seller.
Since our statute does not require a completed sale prior to transportation service, we agree.
One further question deserves comment. Since these cases involve the review of a decision of an administrative agency, the district court heard it upon the evidence produced before the administrative agency. The evidence considered by the court therefore was confined to the record filed with the court, pursuant to Section 28-32-19, N.D.C.C. However, the parties stipulated in the district court for the submission of an additional exhibit, the "typical invoice" referred to above. We have held, in Langer v. State, 75 N.D. 435, 28 N.W.2d 523 (1947), that the trial court may accept, under a stipulation of all interested parties, additional evidence taken before it. It is the stipulation of the parties which distinguishes Langer v. State from Knutson v. North Dakota Workmen's Compensation Bureau, 120 N.W.2d 880 (N.D.1963), which held that it was improper for the district court to take additional evidence over the objection of the adverse party.
Since the parties in the instant cases stipulated for the reception in evidence of the *579 additional evidence, they were within the rule of Langer v. State and there was no error in the reception of the evidence by the district court.
Of course, when additional evidence is received in the district court, that court's function no longer is to review the determination of the administrative agency, but instead to make a new determination of its own based upon all the evidence, including the new evidence. And the function of the Supreme Court likewise is changed. We no longer are bound to review the findings of the administrative agency to determine whether they are supported by substantial evidence, and, if so, to sustain them. Instead, we are required to sustain the findings of the district court unless they are clearly erroneous. We have followed the latter rule here.
Affirmed.
ERICKSTAD, C. J., and KNUDSON, JOHNSON and PAULSON, JJ., concur.

ON PETITION FOR REHEARING.
VOGEL, Judge.
In his petition for rehearing the appellant states that the "typical invoice" referred to in the opinion related only to Ace Mud, and not to Baroid, and was not stipulated into evidence as to Baroid, and therefore the court was in error in applying the "substantial evidence" rule as to Baroid.
The record shows that the trial court, on February 27, 1974, called for trial the two appeals of Ace Mud and Baroid, "which appeals have been consolidated pursuant to stipulation of counsel." Appellant's Exhibit 1, consisting of the "typical invoice" and an attached stipulation, was then marked for identification and offered, without any limitation whatever. The exact language used by counsel follows:
"MR. SUESS: May it please the Court, we at this time offer, pursuant to Section 28-32-06, 1969 North Dakota Century Code, additional evidence to complete the record stipulated by counsel with a typical invoice.
"We offer Appellant's Exhibit 1, which is identified as a typical invoice with qualifications noted in the stipulation attached to invoice of Ace Mud Service for products sold to Chandler & Associates of Denver, Colorado.
"MR. WIRTZ: That is fine.
"THE COURT: Any objections?
"MR. WIRTZ: No.
"THE COURT: Exhibit 1 is received in evidence."
Since the proffer of the evidence was general and unrestricted, it was not improper to consider it in both of the cases consolidated on appeal to the district court and to the Supreme Court. Island v. Fireman's Fund Indemnity Co., 30 Cal.2d 541, 184 P.2d 153, 173 A.L.R. 896 (1947).
"And it is settled that evidence introduced without limitation of purpose is in for all purposes." J. A. LaPorte Corp. v. Pennsylvania-Dixie Cement Corp., 164 Md. 642, 165 A. 195, 168 A. 844, 108 A.L.R. 1474 (1933).
See also Wigmore on Evidence, 3d Ed., § 13.
Rehearing is denied.
ERICKSTAD, C. J., and PEDERSON, PAULSON and SAND, JJ., concur.
NOTES
[1] These transactions, being entirely within the State of North Dakota, normally would have been subject only to the sales tax; however, during the period from July 1, 1965, to April 1, 1967, the sales tax was not in effect [see The Boeing Co. v. Omdahl, 169 N.W.2d 696 (N.D.1969)]. All parties to this action agree that the use tax during that period was coterminous with the sales tax so far as the transactions in issue during that period are concerned.