STATE OF NORTH DAKOTA, on Behalf and for the Benefit of Levi Brontrager, and All Others Similarly Situated, Respondent, v. J. G. MUNDY, Mark Mundy, Ben Imhoff, F. R. Bock and A. R. Grassman, Appellants, and A. MARTEL, M. Leonard and James Mehan, Respondents.

(205 N. W. 684.)

**Statutes — unconstitutional statute embodying express repeal of pre-existing statute held not to effect repeal.**

1. In an action brought against the principal and sureties on a warehouseman's bond given pursuant to the provisions of chapter 138 of the Session Laws of 1919, which act was later declared to be unconstitutional by the Supreme Court of the United States, it is *held:*

Where an unconstitutional act of the legislature embodies an express repeal of a specific pre-existing statute, the unconstitutional act, being void in toto, does not effect a repeal.

**Warehousemen — warehouseman's bond, in compliance with unconstitutional statute, held enforceable.**

2. Where a bond is given, in compliance with the provisions of an unconstitutional statute, for the purpose of enabling the principal to engage upon or continue in the business of a warehouseman, and where other statutes, which purport to have been repealed, also require the giving of a bond, and where, through compliance with the unconstitutional act, the warehouseman was permitted to engage upon or continue in the business, the bond is supported by a consideration independent of the unconstitutional statute and is enforceable.

**Estoppel — person and sureties entering into engagement required by unconstitutional law by receipt of benefits therefrom held precluded to deny validity of engagement or undertaking.**

3. One who voluntarily enters into an engagement which purports to be

---

Note.—(1) Void repealing act as inoperative to repeal prior law, see 25 R. C. L. 913; 4 R. C. L. Supp. 1607; 5 R. C. L. Supp. 1352.

required by an unconstitutional law, for the purpose of enjoying the benefits and advantages to be derived therefrom, and where the contemplated benefits and advantages have accrued to such person, he and his sureties are precluded from denying the validity of the engagement or undertaking.

**Warehousemen — bond held to bind parties by terms fixing beginning of liability.**

4. Where a bond is supported by an independent consideration, the parties are bound by its terms, including terms fixing the beginning of the liability as of a time prior to the execution and delivery of the instrument.

Opinion filed October 22, 1925.

Bonds, 9 C. J. § 43 p. 28 n. 95, 98; § 65 p. 40 n. 62, 63; § 148 p. 84 n. 33. Contracts, 13 C. J. § 267 p. 379 n. 85. Estoppel, 21 C. J. § 111 p. 1111 n. 30; § 113 p. 1112 n. 38; § 128 p. 1126 n. 47. Statutes, 36 Cyc. p. 1098 n. 49, 50; p. 1099 n. 52. Warehousemen, 40 Cyc. p. 407 n. 76.

Appeal from the District Court of Rolette County, *Kneeshaw,* J. Affirmed.

*Fred E. Harris,* for appellant.

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Whitstone v. Stonaker, 110 Neb. 343, 193 N. W. 749.

"In the case of a bond given pursuant to a statutory requirement the provision of law furnishes a sufficient consideration for the condition upon breach of which the obligation becomes absolute. If the statute is unconstitutional the bond is void for want of consideration." 4 Am. & Eng. Enc. Law, 667; Cassell v. Scott, 17 Ind. 514; Beyers v. State, 20 Ind. 47; Colborn v. Townsend, 103 Cal. 233.

"A bond exacted by a judge or other public officer under pretended authority of his office and which he is not legally authorized to require, is void. The same is true of bonds executed for the performance of conditions not authorized by law." 9 C. J. 28, subd. 44.

"A state like any other party, cannot maintain a suit unless it appears that it has such an interest in the subject-matter thereof as to authorize the bringing of a suit by it." 30 Cyc. 908.

The bond is to be construed only according to its express terms.

State v. Farmers Co-op. El. Co. 167 N. W. 223; Northern Light Lodge v. Kennedy, 73 N. W. 524.

*Kehoe & Verret,* for respondent.

By statute in England, United States, California, Colorado, Illinois, Indiana, Iowa, Kentucky, Kansas, Louisiana, Missouri, Michigan, Minnesota, New York, New Mexico, South Carolina, West Virginia, and Wisconsin, it is provided in effect that the repeal of a repealing statute shall not operate to revive the original statute unless it is expressly so provided in the last repealing statute. 36 Cyc. 1100; Manchester Twp. v. Wayne Co. (Pa.) Ann. Cas. 1918B, 283.

The common-law rule of statutory construction is that when a repealing statute is itself repealed, the first statute is revived without any formal words for that purpose, in the absence of a contrary intention expressly declared, or necessarily to be implied. 36 Cyc. 1099.

Where an act expressly repealing another act and providing a substitute therefor is found to be invalid, the repealing clause must also be held to be invalid, unless it shall appear from the same that the legislature would have passed the repealing clause even if it had not provided a substitute for the act repealed. 36 Cyc. 1099; State v. Thomas (Mo.) 39 S. W. 481; People v. Fox (Ill.) 128 N. E. 505; State v. Barker (Utah) 167 Pac. 262; Morton v. State (Ohio) 138 N. E. 45; Bissett v. Pioneer Irrig. Dist. (Idaho) 120 Pac. 461.

"An unconstitutional act is not a law; it confers no rights; it imposes no duties; it affords no protection; it creates no office; it is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County (U. S.) 30 L. ed. 178; Whetstone v. Slonaker (Neb.) 193 N. W. 749.

"An act of the legislature, passed in violation of the Constitution, is void from the date of its enactment, and not from the time it is judicially determined to be in conflict with the supreme law." Finders v. Bodle, 78 N. W. 481.

It is a settled principle of common law that a voluntary bond, which, though not required nor authorized by statute, does not contravene public policy, nor violate any statute, and rests on a sufficient consideration, is binding and enforceable as a common-law obligation. Barnes v. Webster (Mo.) 57 Am. Dec. 232; U. S. v. Hodson (U. S.) 19 L. ed. 940; United States v. Bradley (U. S.) 9 L. ed. 454.

"A bond executed in pursuance of a statute is not necessarily void because the statute is afterward pronounced unconstitutional. If, however, the bond rests on a consideration of its own it may be enforced as a common-law bond, if otherwise unobjectionable." 9 C. J. 28, subd. 43.

BIRDZELL, J. This is an appeal from a judgment in favor of the plaintiff and the interveners herein. The action is against the defendants as principal and sureties upon a warehouseman's bond. Counsel for the appellants have very properly limited the questions for consideration on appeal, so that an extended statement of the facts is not called for. The bond was evidently given, as the complaint declares, for the purpose of obtaining for the defendant J. G. Mundy a state warehouse license which would enable him to operate a warehouse for buying, selling, storing, shipping and handling grain at Umbria in accordance with the requirements of chapter 138 of the Session Laws of 1919. This entire chapter having been declared unconstitutional by the Supreme Court of the United States, Lemke v. Farmers Grain Co. 258 U. S. 50, 66 L. ed. 458, 42 Sup. Ct. Rep. 244, but, nevertheless, grain having been delivered to the principal, and he having failed to account for or redeliver the same in circumstances that render him liable for breach of his obligations as a warehouseman, the question presented on the record is whether or not those who signed the bond may be held for his defaults. The appellants argue:

1. "That if the bond be considered a statutory bond, then its enforcement fails because the statute is unconstitutional.

(a) "That if such bond be considered a common law bond, then the state of North Dakota has no power to enforce it.

2. "That if such bond be declared valid, despite the invalidity of the statute under which it was given, and the state be conceded power to enforce it either as a common law or as a statutory bond, nevertheless the bondsmen are not liable for any acts of J. G. Mundy, their principal, except such acts as were performed by him as a public warehouseman, and are not liable for any grain received by him prior to his becoming such public warehouseman, and prior to the issuance of the warehouse license by the state."

The bond, omitting the justification and approval, is as follows:

KNOW ALL MEN BY THESE PRESENTS, That J. G. Mundy of the county of Rolette and state of North Dakota as principal, and Mark Mundy and Ben Imhoff of the county of Rolette and F. R. Bock and A. R. Grassman of the county of Rolette and state of North Dakota, as sureties, are held and firmly bound unto the state of North Dakota in the penal sum of Five Thousand Dollars, good and lawful money of the United States, the payment of which, well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, firmly by these presents, IN WITNESS WHEREOF, We have hereunto subscribed our names and affixed our seal this 13th day of October, 1921. THE CONDITIONS OF THIS OBLIGATION ARE SUCH, That whereas the principal hereof is the owner, lessee, or manager of an elevator, or a line of elevators or warehouses, doing business in the state of North Dakota as a public warehouse, with elevators or warehouses located at the following places in said State, viz.: Umbria.

That the elevators or warehouses herein named or located, are to be used and operated for the purpose of buying, selling, storing, shipping and handling grain for profit, as public warehouses, as provided by law, relating to public warehouses and warehousemen;

Now, therefore, if the said J. G. Mundy shall faithfully discharge and perform his duties as such public warehouseman and comply with all the laws of the state of North Dakota relative thereto and the rules and regulations adopted by the state inspector of grades, weights and measures of said state in connection therewith, and shall pay for all grain purchased, and all sums for which said principal shall become liable to the holders of warehouse receipts, then this obligation to become null and void, otherwise to remain in full force and effect. Liability upon this undertaking commences on the 1st day of August, 1921, and terminates on the 31st day of July, 1923, unless the same is sooner cancelled by order of the State Inspector of Grades, Weights & Measures.

J. G. Mundy, Principal.

Mark Mundy,
Ben Imhoff,
F. R. Bock,
A. R. Grassman } Sureties. "

The above bond was approved by the state inspector of grades, weights and measures on October 23, 1921 and filed. Some of the grain, the value of which enters into the judgments in question, was deposited with the principal between the first day of August, 1921 and October 23, 1921, the date of the approval of the above bond, and the remainder of the grain was deposited subsequent to the approval.

The contention that the bond fails because of the unconstitutionality of the statute is based upon reasoning to the effect that the statute, being void in toto, would give rise to no liability against or no right in favor of those who have complied with its void provisions. That, since the act is void, the bond was a mere voluntary obligation supported by no independent consideration and, hence, not enforceable.

It is said that, as the state had no authority to demand the bond, its action in taking such bond was wholly nugatory. Reliance is had upon the familiar principle that an unconstitutional law confers no rights and imposes no duties and that any contract dependent thereon for its consideration is necessarily void. We fully recognize the force of this principle, but we are of the opinion that it is not applicable in the instant case. Chapter 138 of the Session Laws of 1919, having been held to be unconstitutional, must necessarily be regarded as void, and, so far as this case is concerned, it is as though the statute had never been enacted. This being true, § 3111 of the Compiled Laws for 1913, which purports to have been repealed (Sess. Laws, 1919, § 32), was not in fact repealed. The section still stands and requires a bond to be furnished. From this it follows that the warehouseman Mundy had no right to engage in the business of a warehouseman without furnishing a bond, and that the unconstitutional statute did not afford the sole impediment upon the right of the warehouseman to engage upon or continue in his business. Hence, the bond in suit does not depend wholly for its consideration upon the unconstitutional statute; it is supported by an independent consideration wholly apart from the void enactment. It is well settled that bonds thus supported are enforceable. See 9 C. J. 28 and cases cited. They are in no sense contrary to public policy.

We think the bond enforceable for another reason. At the time the bond was executed it may properly be assumed that Mundy was legally confronted with the alternative of offering compliance with § 3111,

Comp. Laws, 1913, or of tendering a compliance with the unconstitutional act of 1919. He chose the latter alternative. Since ignorance of the law can not excuse either him or his bondsmen, it must be assumed that this choice was made with knowledge of the invalidity of the requirements under which the bond was given. Hence, it is clear that, through the giving of the bond, Mundy obtained advantages that he could not otherwise have enjoyed without subjecting himself to the burden incident to compliance with § 3111, Comp. Laws, 1913. It must be held that this choice was voluntarily made. Both on principle and authority one who voluntarily enters into an engagement for the purpose of enjoying certain benefits and advantages and by virtue thereof reaps these advantages, is precluded from denying the validity of his engagement or undertaking. United States v. Hodson, 10 Wall. 395, 19 L. ed. 937; Daniels v. Tearney, 102 U. S. 415, 26 L. ed. 187.

In dealing with a somewhat similar situation, the United States Supreme Court in the case of United States v. Hodson, supra, at page 408, said:

"Everyone is presumed to know the law. Ignorance standing alone can never be the basis of a legal right. If a bond is liable to the objection taken in this case and the parties are dissatisfied, the objection should be made when the bond is presented for execution. If executed under constraint, the constraint will destroy it. But where it is voluntarily entered into and the principal enjoys the benefits which it is intended to secure and a breach occurs, it is then too late to raise the question of its validity. The parties are estopped from availing themselves of such defense."

Similarly, in Daniels v. Tearney, supra, it was held that a bond given to secure a stay of execution under a void statute could be enforced where those giving the bond had received the benefit of the stay. The court says (page 421):

"It is well settled as a general proposition, subject to certain exceptions not necessary to be here noted, that where a party has availed himself for his benefit of an unconstitutional law, he can not in a subsequent litigation with others not in that position, aver its unconstitutionality as a defense, although such unconstitutionality may have been pronounced by a competent judicial tribunal in another suit. In such

cases the principle of estoppel applies with full force and conclusive effect. (citing cases.)"

What is said above disposes of all contentions going to the merits of the appeal, except the contention that the judgment includes allowances for grain deposited with Mundy prior to the date of the giving of the bond. We are of the opinion that there is no merit in this contention. Since the bond was supported by an independent consideration, the parties were at liberty to insert therein any terms which they saw fit to embody as a part of their undertaking, so long as they did not infringe upon any rule of public policy. The language of the bond in its concluding sentence makes it clear, in our opinion, that the principal and sureties bound themselves with respect to all grain delivered subsequent to August 1, 1921.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BURKE, JOHNSON, and NUESSLE, JJ., concur.