**SNYDER'S DRUG STORES, INC.,**
Respondent,

v.

**NORTH DAKOTA STATE BOARD OF
PHARMACY, Appellant.**

Civ. No. 8834.

Supreme Court of North Dakota.

Oct. 31, 1972.

Rehearing Denied Nov. 29, 1972.

Conmy, Conmy, Rosenberg, Lucas & Olson, Bismarck, for appellant.

Wattam, Vogel, Vogel & Peterson, Fargo, for respondent.

ERICKSTAD, Judge.

The North Dakota State Board of Pharmacy appeals from the summary judgment ordered by the district court of Burleigh County, which requires the Board to issue a permit to Snyder's Drug Stores, Inc., to operate a pharmacy in the Red Owl Family Center in Bismarck, North Dakota. The judgment is dated January 6, 1972.

An application for a permit to operate a pharmacy was filed on the 25th of January 1971 by Lloyd D. Berkus, as president of Snyder's Drug. As indicated by various documents filed with the application, Snyder's Drug was to lease an area in the store building operated by Red Owl in Bismarck, North Dakota. A part of the store building was to be remodeled to meet the requirements of the Pharmacy Board.

On receipt of the application, the secretary of the Pharmacy Board investigated the proposed site and subsequently filed a report with the Pharmacy Board.

Without complying with Section 28–32–07, N.D.C.C., and without a hearing, the Pharmacy Board denied the application. The denial is contained in the Pharmacy Board's findings of fact, conclusions of law, and order, dated March 22, 1971. Basically, the Board found that the existing facilities of the applicant did not meet the standards required by the Pharmacy Board and that the applicant failed to comply with Subsection 5 of Section 43–15–35, N.D.C.C. This subsection requires in the case of a corporate applicant that the majority of the stock be owned by registered pharmacists in good standing, who are actively and regularly employed in and responsible for the management, supervision, and operation of the pharmacy.

By notice of appeal dated April 12, 1971, Snyder's Drug appealed from the Board's order denying the application. In its specifications of error it asserted that Section 43–15–35(5), N.D.C.C., is unconstitutional, in that it violates the equal-protection and the due-process clauses of Section 1 of the Fourteenth Amendment to the United States Constitution, and Sections 11 and 20 of the North Dakota Constitution. It also asserted that the Board's findings that it failed to comply with the regulations of the Board were not supported by the evidence and were not in accordance with the law.

On appeal to the district court, a motion for summary judgment was made by Sny-

der's Drug. The trial court granted the motion upon the ground that Section 43–15–35(5), N.D.C.C., violates the previously described sections of the Constitutions of the United States and of North Dakota. It apparently further concluded that Snyder's Drug had satisfactorily complied with all reasonable regulations of the Board of Pharmacy entitling it to a permit to do business as a pharmacy.

Because the constitutional question is most crucial, we shall consider it first.

The case relied upon by the trial court in rendering its order and by Snyder's Drug in resistance to the appeal is Liggett Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57, 73 L. Ed. 204 (1928).

In *Baldridge,* the United States Supreme Court was considering the constitutionality of a Pennsylvania statute enacted in 1927. That statute required in the case of corporations, associations, and co-partnerships that all the partners or members thereof should be licensed pharmacists, with the exception that such corporations which were already organized and existing and duly authorized and empowered to do business in the state and owned and conducted pharmacies in the state, and which at the time of the passage of the Act still owned and conducted pharmacies in the state, could continue to do so.

Liggett Company, which at the time of the passage of the Act was empowered to own and conduct, and did own and conduct, pharmacies in the state, purchased two additional pharmacies, and it was in conjunction with the operation of these two additional pharmacies that the company was threatened with prosecution. The company sought to enjoin the attorney general and the district attorney from prosecuting it. The lower court, composed of three judges, held that the statute was constitutional upon the ground that there was a substantial relation to the public interest in the ownership of the drugstore where prescriptions were compounded.

The majority of the United States Supreme Court, speaking through Justice Sutherland, found the Act to be unconstitutional, in contravention of the due-process clause of the Fourteenth Amendment to the United States Constitution.

A pertinent part of the Sutherland opinion follows:

"The police power may be exerted in the form of state legislation where otherwise the effect may be to invade rights guaranteed by the Fourteenth Amendment only when such legislation bears a real and substantial relation to the public health, safety, morals, or some other phase of the general welfare. Here the pertinent question is: What is the effect of mere ownership of a drug store in respect of the public health?

"A state undoubtedly may regulate the prescription, compounding of prescriptions, purchase and sale of medicines, by appropriate legislation to the extent reasonably necessary to protect the public health. And this the Pennsylvania Legislature sought to do by various statutory provisions in force long before the enactment of the statute under review. Briefly stated, these provisions are: No one but a licensed physician may practice medicine or prescribe remedies for sickness; no one but a registered pharmacist lawfully may have charge of a drug store; every drug store must itself be registered, and this can only be done where the management is in charge of a registered pharmacist; stringent provision is made to prevent the possession or sale of any impure drug or any below the standard, strength, quality and purity as determined by the recognized pharmacopoeia of the United States; none but a registered pharmacist is permitted to compound physician's prescriptions; and finally, the supervision of the foregoing matters and the enforcement of the laws in respect thereof are in the hands of the State Board of Pharmacy, which is given broad powers for these purposes.

"It therefore, will be seen that without violating laws, the validity of which is conceded, the owner of a drug store, whether a registered pharmacist or not,

cannot purchase or dispense impure or inferior medicines; he cannot, unless he be a licensed physician, prescribe for the sick; he cannot unless he be a registered pharmacist, have charge of a drug store or compound a prescription. Thus, it would seem, every point at which the public health is likely to be injuriously affected by the act of the owner in buying, compounding, or selling drugs and medicines is amply safeguarded.

"The act under review does not deal with any of the things covered by the prior statutes above enumerated. It deals in terms only with *ownership*. It plainly forbids the exercise of an ordinary property right and, on its face, denies what the Constitution guarantees. A state cannot, 'under the guise of protecting the public, arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them'." Liggett Co. v. Baldridge, 278 U.S. 105 at 111, 49 S.Ct. 57 at 59, 73 L.Ed. 204 (1928).

Justice Holmes, joined by Justice Brandeis, filed a short dissent. A part of the dissent follows:

"A standing criticism of the use of corporations in business is that it causes such business to be owned by people who do not know anything about it. Argument has not been supposed to be necessary in order to show that the divorce between the power of control and knowledge is an evil. The selling of drugs and poisons calls for knowledge in a high degree, and Pennsylvania after enacting a series of other safeguards has provided that in that matter the divorce shall not be allowed. Of course, notwithstanding the requirement that in corporations hereafter formed all the stockholders shall be licensed pharmacists, it still would be possible for a stockholder to content himself with drawing dividends and to take no hand in the company's affairs. But obviously he would be more likely to observe the business with

an intelligent eye than a casual investor who looked only to the standing of the stock in the market. The Constitution does not make it a condition of preventive legislation that it should work a perfect cure. It is enough if the questioned act has a manifest tendency to cure or at least to make the evil less. It has been recognized by the professions, by statutes and by decisions that a corporation offering professional services is not placed beyond legislative control by the fact that all the services in question are rendered by qualified members of the profession. [Citations omitted.]

"But for decisions to which I bow I should not think any conciliatory phrase necessary to justify what seems to me one of the incidents of legislative power. I think however that the police power as that term has been defined and explained clearly extends to a law like this, whatever I may think of its wisdom, and that the decree should be affirmed.

"Of course the appellant cannot complain of the exception in its favor that allows it to continue to own and conduct the drug stores that it now owns. The Fourteenth Amendment does not forbid statutes and statutory changes to have a beginning and thus to discriminate between the rights of an earlier and those of a later time." Liggett Co. v. Baldridge, *supra*, 49 S.Ct. 57 at 60.

■ The Board of Pharmacy contends that *Baldridge* may be distinguished from the instant case on the basis of the statutory provisions. They point out that the Pennsylvania statute required that one hundred percent of the stock of the corporation be owned by pharmacists, whereas the North Dakota statute required only that a majority of the stock be owned by pharmacists. The Board further emphasizes that the North Dakota statute is concerned with control rather than mere ownership.

We do not believe that this difference is significant, particularly in light of the fact

that under the Pennsylvania statute requiring pharmacists to own one hundred percent of the stock, control was of necessity in pharmacists much the same as under the North Dakota statute, which requires that the majority stock be owned by registered pharmacists in good standing, who are actively and regularly employed in and responsible for the management, supervision, and operation of the pharmacy.

The Board of Pharmacy contends that this case should be remanded for an evidentiary hearing before it relative to the constitutionality of the Act. It contends that although the constitutional issue was argued before the trial court, no evidence as such was submitted to the trial court on this issue, and accordingly, because this was an appeal from an administrative agency to the trial court, that if any evidence is to be submitted on this issue the case should be remanded to the administrative agency for that purpose.

Since no transcript has been certified to this court of the proceedings before the trial court, we do not know what took place before the trial court; but it does not appear from any of the arguments made in this court that a motion to remand the case to the administrative agency was made by any party for any purpose when the case was being considered by the trial court.

In respect to the facts relative to the constitutional issue, we find ourselves in the same position as the majority of the United States Supreme Court in *Baldridge*.

We quote:

"In the light of the various requirements of the Pennsylvania statutes, it is made clear, if it were otherwise doubtful, that mere stock ownership in a corporation, owning and operating a drug store, can have no real or substantial relation to the public health; and that the act in question creates an unreasonable and unnecessary restriction upon private business. *No facts are presented by the record, and so far as appears, none were presented to the Legislature which enact-*

*ed the statute, that properly could give rise to a different conclusion.* It is a matter of public notoriety that chain drug stores in great numbers, owned and operated by corporations, are to be found throughout the United States. They have been in operation for many years. We take judicial notice of the fact that the stock in these corporations is bought and sold upon the various stock exchanges of the country and, in the nature of things, must be held and owned to a large extent by persons who are not registered pharmacists. If detriment to the public health thereby has resulted or is threatened, some evidence of it ought to be forthcoming. None has been produced, and, so far as we are informed, either by the record or outside of it, none exists. The claim, that mere ownership of a drug store by one not a pharmacist bears a reasonable relation to the public health, finally rests upon conjecture, unsupported by anything of substance." Liggett Co. v. Baldridge, *supra,* 49 S.Ct. 57, at 59, 60. [Emphasis added.]

 Having no assurance from the Board of Pharmacy that specific evidence lacking in *Baldridge* and so far lacking in the instant case could be supplied on a remand, notwithstanding the Board's request that this case be remanded to the trial court with instructions to remand to the Pharmacy Board for an evidentiary hearing on the constitutional issue, and because of the Board's failure to this date to produce such evidence, we hold that this request comes too late.

Being bound by the decision of the United States Supreme Court in *Baldridge,* and seeing insufficient basis for distinguishing that decision from the instant case, we sustain the trial court's conclusion that Section 43–15–35(5), N.D.C.C., violates the due-process clause of Section 1 of the Fourteenth Amendment to the United States Constitution.

Since genuine issues of material facts otherwise exist in conjunction with the application on the part of Snyder's Drug for a permit, the motion for summary judg-

ment as to those issues should have been denied by the trial court under Rule 56 of the North Dakota Rules of Civil Procedure.

Because no evidentiary hearing was held by the Board of Pharmacy on the application for a permit, we remand the case to the trial court with instructions to it to remand the case to the Board of Pharmacy for an administrative hearing on the application, sans the constitutional issue, pursuant to our Administrative Agencies Practice Act. See especially Sections 28–32–07, 28–32–18, and 28–32–19, N.D.C.C.

For the reasons stated, the judgment of the trial court is affirmed as it relates to the constitutional issue and reversed as it relates to the applicant's proof that it is otherwise qualified to receive a permit to operate a pharmacy under North Dakota law and the regulations of the North Dakota Board of Pharmacy.

STRUTZ, C. J., and PAULSON, TEIGEN and KNUDSON, JJ., concur.