Application of Dale L. Johnson, d/b/a Johnson's Moving Co., Wahpeton, North Dakota, for a Special Certificate of Public Convenience and Necessity.

Dale L. JOHNSON, d/b/a Johnson's Moving Co., Wahpeton, North Dakota, Appellee,

v.

Richard A. ELKIN, Ben J. Wolf, Bruce Hagen, as members of the Public Service Commission of the State of North Dakota, Appellants,

and

Nick Schmit of Schmit's Inc., Wyndmere, North Dakota, a corporation, Respondent.

Civ. No. 9341.

Supreme Court of North Dakota.

Feb. 16, 1978.

Ray H. Walton, Commerce Counsel, and David W. Tiistola, Asst. Commerce Counsel, Public Service Commission, Bismarck, for appellant; argued by David W. Tiistola.

Johnson, Milloy, Johnson, Stokes & Robinson, Wahpeton, for appellee; argued by A. W. Stokes, Wahpeton.

VOGEL, Justice, on reassignment.

This is an appeal by the PSC (Public Service Commission) from a judgment entered by the Richland County District Court reversing the decision of the PSC and holding, inter alia, that the PSC determination made under the 1973 amendments to Chapter 49–18, North Dakota Century Code (Ch. 380, S.L.1973), violated Johnson's rights under Sections 1, 13 and 20 of the North Dakota Constitution and Section 1 of the Fourteenth Amendment to the United States Constitution. We reverse the judgment as to constitutionality, hold that the statute is constitutional and remand for reinstatement of the PSC determination.

In February 1976, Dale Johnson filed an application (pursuant to the provisions of Section 49–18–12, N.D.C.C.) with the PSC

for a Special Certificate of Public Convenience and Necessity to authorize the transportation of:

"Buildings, sections of buildings and other bulky objects, which because of their nature require the use of equipment characteristic to the house moving industry, to, from and within Richland County in North Dakota."

A hearing before an examiner for the PSC on the application was held in Wahpeton in May and, in July, the PSC entered its findings of fact, conclusions of law and order which denied the application on the grounds that public convenience and necessity did not require a granting of the application and that the applicant was not financially able to provide the services. Pursuant to the Administrative Agencies Practice Act (Chapter 28–32, N.D.C.C.), Johnson filed an appeal, with specifications of error, claiming that (1) the decision is not in accordance with law, (2) the decision violates his constitutional rights, and the statute in question is unconstitutional, (3) the findings of fact are not supported by the evidence, and (4) the conclusion and decision are not supported by the findings of fact.

I

■ We begin with a matter not raised by the parties, which concerns the orderly administration of the judicial procedures involved in appeals from administrative agencies. The question is whether a constitutional issue can be raised for the first time at the district court level on an appeal from an administrative agency. We hold that under certain circumstances it can be so raised.

Johnson applied to the PSC for a permit to operate as a house mover. A hearing was held on his application and a subsequent order entered denying the application. At the PSC hearing no question of constitutionality was raised. Johnson then appealed to the district court, raising both constitutional and statutory questions. The constitutional issue was decided in his favor, by a judgment that the decision was unconstitutional. The PSC appealed to this court and the constitutional issues were briefed and argued by both parties.

At the district court hearing no issue was raised as to whether the record of the administrative hearing must raise the issue of constitutionality. Both parties apparently assumed that the issue was properly before the district court and the court did likewise. No additional evidence was received at the district court level. When the PSC appealed the district court judgment to this court, neither party raised the question of whether the record in the administrative agency [which is what we review in such cases—see *O'Brien v. North Dakota Workmen's Compensation Bureau*, 222 N.W.2d 379 (N.D. 1974), and cases cited] permits us to review a constitutional question raised only at the district court level. On the contrary, both parties ask us to decide the constitutional issue, rather than leave intact the determination of the district court.

We are faced, then, with a statute (Section 28–32–19, N.D.C.C.) and court interpretations which permit us to review, on the second appeal in an administrative agency case, only the record made in the administrative agency, and a record in this case which indicates that the constitutional issue was not raised at the agency level but was raised in the first appeal, to the district court, which heard no additional evidence.

We hold that it was proper, under the circumstances of this case, to raise and consider the constitutional question in the district court. No further evidence was received in that court—it obeyed the injunction of Section 28–32–19, N.D.C.C., that it "try and hear an appeal . . . without a jury and the evidence considered by the court shall be confined to the record filed with the court. . . ." The court considered a new issue, constitutionality, but that issue is one which the statute, at least by implication, allows to be raised at the district court level. The statute provides that the court shall affirm the decision of the administrative agency unless it makes one of six findings, two of which are: "1. The decision or determination is not in accordance with the law. 2. The decision

is in violation of the constitutional rights of the appellant."

It seems to us that a decision which is, or is claimed to be, unconstitutional is, or may be, in violation of the constitutional rights of a party who has standing to challenge constitutionality.

On the question of whether a litigant can raise constitutional questions for the first time on an appeal to a district court we have made inconsistent statements. In *Family Center Drug Store, Inc. v. North Dakota State Board of Pharmacy*, 181 N.W.2d 738 (N.D.1970), an appellant had attempted to raise the constitutional question for the first time in the Supreme Court, and we referred to the rule that questions could not be raised for the first time in this court, and said:

"Without deciding whether circumstances and conditions in some cases might justify the nonapplication of that rule, we conclude that in this case there is no compelling reason why that rule should not be applied, and accordingly we apply it here. It is our view in support of that conclusion that if this constitutional issue is to be considered, it should be considered only after it has been adequately and properly briefed by both sides and after it has been submitted in the first instance to the trial court for its determination." 181 N.W.2d at 745–746.

In *Benson v. North Dakota Workmen's Compensation Bureau*, 250 N.W.2d 249, 250–251 (N.D.1977), we said, in a case involving an appeal from a district court determination that the agricultural exclusion in the workmen's compensation law was unconstitutional, that:

"Furthermore, while Section 65–10–01, NDCC, of the Workmen's Compensation Act provides for appeal to the district court from the Bureau's decision, the appealable issues under the Act do not include the constitutionality of the Act itself. Section 65–10–01 provides that any appeal to the district court shall be heard upon the record transmitted from the Bureau and it further specifies that an appeal under that section shall be taken in the manner provided in Chapter 28–32, NDCC, the Administrative Agencies Practice Act. That Act also provides that the record made before the administrative agency is the record considered on appeal. Section 28–32–19, NDCC; *Application of Bank of Rhame*, 231 N.W.2d 801 (N.D.1975). The issue of the constitutionality of the agricultural exclusion was not raised before the Workmen's Compensation Bureau, and therefore it cannot be a part of that agency's record filed with the district court on appeal. It cannot be raised for the first time on appeal to the district court when it was not raised initially at the administrative hearing. See 5 Am.Jur.2d Appeal and Error, § 574, at 48; *Hazelton-Moffit Special School Dist. No. 6 v. Ward*, 107 N.W.2d 636 (N.D. 1961)."

We are satisfied that the latter statement goes too far. It fails to distinguish between *evidence*, which must be part of the record made in the administrative agency, and *issues*, which may be raised in the district court. Most of the authorities cited by us in *Benson* refer to the undoubtedly correct rule that issues must be raised in the trial court if they are to be raised on appeal. This rule does not preclude the raising of issues in the first court to consider the case (here the district court), with a subsequent appeal to the Supreme Court. We further note that in *Benson* our ruling was based in part upon factors not present here—a "seriously inadequate evidentiary record," the fact that the farmer-employer was not a party to the proceedings at any level, and a hint that his presence was necessary in order to provide a desired adversary confrontation.

■ In holding that the issue may be first raised at the district court level, we have in mind the general rule, which we adopt, that administrative agencies have no authority to decide upon the constitutionality of the statutes under which they operate. See authorities collected in Justice Mosk's dissent in *Southern Pacific Transportation Company v. Public Utilities Commission*, 18 Cal.3d 308, 134 Cal.Rptr. 189, at page 194,

556 P.2d 289, at page 294. The minority rule was followed by the majority of the California Supreme Court in the *Southern Pacific* case.

We adhere to the majority rule. Having done so, we believe there is no good reason to require the issue of constitutionality to be raised before an administrative agency which not only lacks the power to decide the question, but is often presided over by persons who are undoubtedly well versed in regulatory matters but lack any expertise in constitutional law. We reserve the issue of constitutionality, and the decision on it, to the first court to which the agency decision is appealed.

■ We adhere to the rule that evidence should be presented to the administrative agency, even though that evidence may relate to a constitutional issue which that agency has no power to decide. Very often the evidence on the constitutional issue will also be relevant to other issues before the agency. Even if additional evidence is taken on the constitutional issue, the time spent in taking it will be justified by the fact that the record will be in one unit and only one evidentiary hearing will be needed. However, the rule that evidence should be presented to the administrative agency does not preclude the raising of the constitutional issue at that level, either during the proceeding or by petition for rehearing. The administrative agency may, if it wishes, indicate its views as to constitutionality, but such views are not to be considered as binding.

We do not preclude the taking of testimony at the district court level, if done by stipulation. See *In Re Sales & Use Tax Det. By St. Tax Com'r*, 225 N.W.2d 571 (N.D.1975). And the district court may, as always, remand a case to the administrative agency for a further evidentiary hearing, if it chooses to do so under the provisions of Section 28–32–18, N.D.C.C.

In sum, then, we hold that a question of the constitutionality of an act under which an administrative agency operates may be raised for the first time on appeal to the district court, if based solely on the record

made in the administrative agency, either at the original agency hearing or a subsequent agency hearing ordered by either the agency or the district court, or if based upon evidence heard by stipulation before the district court.

We therefore proceed to the merits of the constitutional question.

II

■ The trial court held that the refusal of the PSC to permit Johnson to engage in the business of house moving was unconstitutional. After discussing legislative history, the court said that:

"The result of the Public Service Commission's determination· is to sanction an unregulated monopoly and to deny to others the right to compete with that monopoly. It is the opinion of this Court that to deny to the petitioner his right to compete with established businesses is a violation of his constitutional rights.

·  ·  ·

"It appears to this writer that the principles laid down in the case of *State v. Cromwell* (N.D.1943) [72 N.D. 565] 9 N.W.2d 914, are applicable to this case. The Public Service Commission, by its determination denying his application, violated Mr. Johnson's rights as guaranteed to him by Sections 1, 13 and 20 of the North Dakota Constitution and Section 1 of the Fourteenth Amendment to the United States Constitution."

The district court did not say that all regulation of house movers was unconstitutional. Its decision applied only to the refusal of the PSC to allow Johnson to enter into the house moving business, *i. e.*, the requirement of a certificate of the PSC before engaging in the business.

In this court Johnson relies primarily upon one North Dakota case, *State v. Cromwell*, 72 N.D. 565, 9 N.W.2d 914 (1943), and upon one United States Supreme Court case, *New State Ice Co. v. Liebmann*, 285 U.S. 262, 52 S.Ct. 371, 76 L.Ed.2d 747 (1932),

and, as parallel authorities, a group of decisions of the Georgia Supreme Court.[1]

*New State Ice Company, supra,* is an odd case to cite in the 1970's. It was among the last cases to uphold the long outdated doctrine of "business affected with a public interest." That concept died within a few years after *New State Ice* was decided, the death blow being delivered by *Nebbia v. New York,* 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934), which held that no business was necessarily exempt from the operations of the police power.

*Nebbia v. New York, supra,* was only one of the cases decided in the 1930's which abolished in federal court the doctrines collectively described as "substantive due process." As to economic matters, such as the regulation of business, substantive due process has never been revived in the federal courts, although as to some non-economic matters it seems sometimes to have been reborn. See, as examples, *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), and *Quilloin v. Walcott,* —— U.S. ——, 98 S.Ct. 549, 54 L.Ed.2d 549 (1978).

Substantive due process in economic matters began in the federal courts with *Allgeyer v. Louisiana,* 165 U.S. 578, 17 S.Ct. 427, 41 L.Ed. 832 (1897), and ended in 1937.

The last time this court relied upon a pre-1937 United States Supreme Court substantive due process case as authority to decide a state law unconstitutional, *Family Center Drug Store, Inc. v. North Dakota State Board of Pharmacy,* 181 N.W.2d 738 (N.D.1970), we were told by the United States Supreme Court[2] that its prior decision upon which we relied, *Liggett Co. v. Baldridge,* 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 204 (1928), was a "derelict in the stream of the law," that it was overruled, and that we were free to decide the case under state law, which we then did, in *Snyder's Drug Stores, Inc. v. North Dakota*

*State Board of Pharmacy,* 219 N.W.2d 140 (N.D.1974). We held it was constitutional.

In state courts substantive due process in economic matters has continued to be used as a ground for decision. It has sometimes been ill but never moribund. As we pointed out in *Johnson v. Hassett,* 217 N.W.2d 771 (N.D.1974), state courts have never totally relinquished substantive due process as a permissible ground of decision. An excellent article by Professor A. E. Dick Howard, in 62 Va.L.Rev. 873 (June, 1976), entitled "State Courts and Constitutional Rights in the Day of the Burger Court," makes this point at some length (pages 879–90), and also points out that there may be good reasons why states should be able to apply the doctrine and federal courts should not (pages 934–44).

We are satisfied that the trial court erred in finding that the decision of the PSC was unconstitutional under the Fourteenth Amendment of the United States Constitution. Something more recent than the majority opinion in *New State Ice, supra,* would be required to convince us otherwise. That decision lives today only in the brilliant dissent of Justice Brandeis, which anticipated the post-1937 decisions of the United States Supreme Court on non-interference in legislative determinations of economic matters.

## III

We now consider the State Constitution. *State v. Cromwell, supra,* involved a statute requiring photographers to be licensed. This court, in 1943, held that statute unconstitutional. It found nothing about the business of photography which required regulation any more than any other business, and held that the statute which prohibited entry into the business without a license violated Sections 1, 13 and 20 of the

1. *Aero Mayflower Transit Co. v. Georgia P. Service Com'n,* 179 Ga. 431, 176 S.E. 487 (1934); *Georgia Public Service Commission v. Taylor,* 172 Ga. 100, 157 S.E. 515 (1931); *McIntyre v. Harrison,* 172 Ga. 65, 157 S.E. 499 (1931).

2. *North Dakota State Board of Pharmacy v. Snyder's Drug Stores, Inc.,* 414 U.S. 156, 94 S.Ct. 407, 38 L.Ed.2d 379 (1973).

North Dakota Constitution.[3] This holding was based upon what the Michigan Law Review (70 Mich.L.Rev. at 1157) called an "expansive" reading of Article I, Section 1, of the North Dakota Constitution, quoted above.

Even an expansive reading of Sections 1, 13 and 20 does not justify declaring unconstitutional the statute and decision with which we are concerned.

*State v. Cromwell, supra,* recognizes a right to engage in ordinary occupations without regulation, but it modifies that general statement by a recognition that such a right is limited by the "police power" which it defines as "the power to impose such restrictions upon private rights as are practically necessary for the general welfare of all." [4] *State v. Cromwell* illustrates this principle with many citations. It also recognizes that *any* business to some extent may be subject to regulation as permitted by constitutional guaranties, citing *Neer v. State Live Stock Sanitary Board,* 40 N.D. 340, 168 N.W. 601 (1918), and *New State Ice Company, supra.* But when it quotes from *New State Ice Company,* the quotation is from the Brandeis dissent including the following:

" ' . . . In my opinion, the true principle is that the state's power extends to every regulation of any business reasonably required and appropriate for the public protection. I find in the due process clause no other limitation upon the character or the scope of regulation permissible.' " 9 N.W.2d at 920.

Our court in *Cromwell* made the distinction between forbidding entry into a business and regulating the conduct of it. But the court was careful to point out that it was speaking of the business of photography only, and that other businesses would be judged on Justice Brandeis' test of whether the regulation was "reasonably required and appropriate for the public protection."

We do not read *State v. Cromwell, supra,* as prohibiting all restrictions on entry into a business or profession. Such a reading would destroy a great deal of necessary protection from incompetence, chicanery and corruption. Many occupations are subject to licensing provisions, and without a license it may be made criminal to engage in them. We have approved legislative prohibition of engaging in many professions. In *Bob Rosen Water Conditioning Co. v. City of Bismarck,* 181 N.W.2d 722 (N.D. 1970), we cited *State v. Cromwell, supra,* but found constitutional a statute prohibiting entry into the occupation of plumbing to those who hold licenses as plumbers. The distinction between the two cases was that plumbing was within the police power of the state, since it affected health, while photography was not within the police power.

Other cases upholding the limitation of entry into various occupations include *Tayloe v. City of Wahpeton,* 62 N.W.2d 31 (N.D.1953) (garbage collection); *Snyder's Drug Store, Inc. v. North Dakota State Board of Pharmacy, supra,* (ownership of pharmacies by non-pharmacists); *Ex parte Bryan,* 66 N.D. 241, 264 N.W. 539 (N.D. 1936) (taxicabs); and *Evans v. Hoyme,* 78 S.D. 509, 105 N.W.2d 71 (1960) (practice of a

---

**3.** "Section 1. All men are by nature equally free and independent and have certain inalienable rights, among which are those enjoying and defending life and liberty; acquiring, possessing and protecting property and reputation; and pursuing and obtaining safety and happiness."

"Section 13. In criminal prosecutions in any court whatever, the party accused shall have the right to a speedy and public trial; to have the process of the court to compel the attendance of witnesses in his behalf; and to appear and defend in person and with counsel. No person shall be twice put in jeopardy for the same offense, nor be compelled in any criminal

case to be a witness against himself, nor be deprived of life, liberty or property without due process of law."

"Section 20. No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens."

**4.** Another definition can be found in *State ex rel. City of Minot v. Gronna,* 79 N.D. 673, 59 N.W.2d 514 at 532 (1953).

healing art); and see *Menz v. Coyle,* 117 N.W.2d 290 (N.D.1962) (practice of law, dictum).

■ We conclude that there is no general constitutional prohibition against legislation limiting entry into occupations or professions. Any occupation or profession may be subject to the police power. The only question is whether the regulation, as to entry into the occupation or profession or otherwise, is reasonable and, within constitutional limits, promotes the order, safety, health, morals and general welfare of society. *State ex rel. City of Minot v. Gronna, supra.*

Of all the occupations, trades and professions, that of a carrier for hire is surely one of the most regulated. Not only are common carriers for hire regulated as public utilities, but they are also regulated as users of the highways, which are public property.

Restrictions on the use of highways extend even to the licensing of automobiles, Chapter 39–04, N.D.C.C., and of drivers, Chapter 39–06, N.D.C.C.

■ The licensing of drivers is not a violation of due process. *State v. Kromarek,* 78 N.D. 769, 52 N.W.2d 713 (1952), *cert. den.* 343 U.S. 968, 72 S.Ct. 1064, 96 L.Ed. 1364 (1952).

The Legislature has determined that house movers are a variety of common motor carriers who may operate only after obtaining Certificates of Public Convenience and Necessity to do so from the PSC. Sections 49–18–06 and 49–18–48, N.D.C.C. This is a determination which is surely within the proper functions of the legislative branch.

The business of carriage for hire of buildings is one which may involve damage to highways, utility lines carrying telephone messages or lethal electric current, and other functions of great interest to the general public. We have no hesitation in finding that regulation, both of entry into and operation of such a business, is within the police power of this State. It is additionally subject to regulation as to the use of highways.

We therefore reverse the trial court on the constitutional question.

## IV

■ One further matter remains for discussion. Johnson challenges the finding of fact which states that he has met assets in the sum of $200 and liabilities in excess of $19,000. He contends that a proper evaluation of the evidence discloses not that he has a deficit net worth, as found by the PSC, but that he has a positive net worth of approximately $12,000. The preponderance of the evidence supports the PSC finding. It therefore meets the requirements of the only test which we apply. See Sections 28–32–19 and 28–32–21, N.D.C.C.

Johnson says that the conclusions are faulty: first, because they are supported only by a faulty finding of net worth and, second, because there was a great deal of testimony to the effect that the service provided by existing carriers of buildings was inadequate in Richland County. The PSC concluded:

"That public convenience and necessity does not require a granting of the application herein sought.

"That the applicant is not financially able to provide the services sought herein."

■ These conclusions are particularly within the expertise of the PSC and its staff of engineers, accountants, and transportation specialists. We are reluctant to substitute our judgment for that of administrative experts on matters of a technical nature. *Bank of Hamilton v. State Banking Bd.,* 236 N.W.2d 921 (N.D.1976); *Application of Bank of Rhame,* 231 N.W.2d 801 (N.D.1975); *First American Bank and Trust Co. v. Ellwein,* 221 N.W.2d 509 (N.D.1974).

Applying the three-step process described in *Bank of Hamilton, supra,* 236 N.W.2d at 925, we conclude that: (1) the PSC's findings of fact are supported by substantial evidence (which, under the 1977 amendment, must be by a preponderance of evidence); (2) its conclusions of law are sustained by the findings of fact; and (3) its decision is supported by the conclusions of law.

## V

## CONCLUSION

The judgment of the district court is reversed and the case remanded for judgment reinstating the order of the PSC.

ERICKSTAD, C. J., concurs.

PEDERSON, Justice, concurring specially.

A clue to the agony which this Court goes through when confronted by an appeal under the Administrative Agencies (Uniform) Practice Act (Chapter 28–32, NDCC) is hidden in three simple words found in *Benson v. N. D. Workmen's Comp. Bureau,* 250 N.W.2d 249, 250 (N.D.1977): "after many conferences." The comprehensive opinion in *Reserve Mining Co. v. Herbst,* 256 N.W. 2d 808 (Minn.1977), indicates that we haven't been alone in our agony. As long as we permit it, the Legislature, the administrative agencies, the lawyers representing administrative agencies, and the lawyers who represent clients in proceedings before administrative agencies, all will have to continue to grope for solutions. Normally we blame the Legislature, or the administrators, or the lawyers for such things but, in this case, I believe the Court cannot escape responsibility for some of the confusion.

Even though I recognize the compelling argument in the dissent, I now must concur with the conclusions reached by Justice Vogel because I deem it necessary that we make the first move to get our ducks in a row so that others who are concerned can know what they can do if they would like to eliminate some of the mass confusion. As a former administrative agency legal advisor for twenty-one years, this is not my first contact with the problem and, as the author of the opinion in *Benson, supra,* I feel an obligation to help get us off dead center.

This "uniform" Act was enacted by the Twenty-Seventh Legislative Assembly (Ch. 240, S.L.1941). It contained provisions for hearings before administrators; recording testimony; findings of fact, conclusions, and decision of agency; appeals to the district court; the preparation of specifications of error; and scope of and procedure on appeal (to the district court). It further provided that "the judgment of the district court . . . may be reviewed in the Supreme Court on appeal in the same manner as any case tried to the court without a jury may be reviewed . . . .."

In 1941, when this language was used, appeals of cases tried to the court without a jury meant that § 7846 of the Supplement to the Compiled Laws of 1913, as amended by Chapter 208, S.L.1933 (the so-called Newman Law), applied. (Until repealed by Ch. 311, S.L.1971, it was found at § 28–27– 32, NDCC.) There was no hint that the Supreme Court review was of anything other than the "judgment of the district court." There was at least an implication, because of the common practices at the time, that the judgment had to be supported by the district court's findings of fact, conclusions of law, and order for judgment.

The real complication was hidden in § 19, Ch. 240, S.L.1941 (now § 28–32–19, NDCC), wherein it is stated that "the court [meaning the district court] shall affirm the decision of the agency unless it shall find that such decision or determination is not in accordance with law, or that it is in violation of the constitutional rights of the appellant, or that any of the provisions of this act have not been complied with in the proceedings before the agency, or that the rules or procedure of the agency have not afforded the appellant a fair hearing, or that the findings of fact made by the agency are not supported by the evidence, or that the conclusions and decision of the agency are not supported by its findings of fact." (This provision was not changed until the amendment made by Chapter 287, S.L.1977.)

This nice sounding language described neither beast nor fowl, but some kind of hybrid. It imposed an appellate function upon a trial court, but restricted it in such a way that neither a trial nor an appellate posture resulted. The consequences were that it had to be mostly ignored, not only by

administrators, lawyers, and trial judges but by the Supreme Court, because of the requirement in the original § 21 that the review here, also, be "in the same manner as any case tried to the court without a jury." See, for example, *Morel v. Thompson*, 225 N.W.2d 584 (N.D.1975), where we said that "it is the findings of fact of the Bureau that we must sustain if supported by substantial evidence," but then said, "we have reviewed the findings of the trial court and conclude that they are supported by substantial evidence." [1]

Ultimately, this Court faced a part of the problem when it decided *Geo. E. Haggart, Inc. v. North Dakota Work. Comp. Bur.*, 171 N.W.2d 104 (N.D.1969). The Court was not unanimous—the present Chief Justice Erickstad authoring a four-to-one majority opinion, and the then Chief Justice Teigen dissenting. Many times since, *Haggart* has been followed and relied upon, sometimes applied when the factual situation didn't warrant it.

The 1975–1977 Interim Committee on Judiciary "C" of the North Dakota Legislative Council studied administrative law and proposed the amendment of § 28–32–21. The Legislative Council Report to the Forty-fifth Legislative Assembly, 1977, at pages 150–151, states as follows:

"Section 28–32–21 presently states that the judgment of the district court in an appeal from a decision of an administrative agency may be reviewed in the Supreme Court on appeal in the same manner as any case tried to the court without a jury may be reviewed. The Supreme Court has said its review is the same as in district court where the evidence considered is confined to the record filed with the court after which the decision of the agency is affirmed unless the court finds that: (1) the decision is not in accordance with law, (2) the decision is in violation of constitutional rights, (3) any of the provisions of Chapter 28–32 have not been complied with, (4) the rules of

procedure have not afforded the appellant a fair hearing, (5) the findings of fact are not supported by the evidence, or (6) the conclusions and decision of the agency are not supported by its findings of fact. Section 28–32–21 would provide that Supreme Court review be coextensive with that done in district court."

To say that the judgment of the district court is to be reviewed in the Supreme Court in the same manner as provided in § 28–32–19 is a latent ambiguity. Section 28–32–19 does not provide a manner of review of the judgment of the district court—it provides a manner of review of the determination of the administrative agency. The dissent in this case would have us adopt a view that would leave us with other problems because of some significant language in § 28–32–19. That section more nearly suggests to me that the Legislature intended that (1) constitutional questions cannot and need not be raised before an administrative agency [the Legislature might decide otherwise after reading *The Authority of Administrative Agencies to Consider the Constitutionality of Statutes*, 90 Harv.L.Rev. 1682 (1977)], (2) laws which authorize an agency to violate a citizen's constitutional rights may be challenged when there is an unconstitutional decision, and (3) constitutional questions (whether relating to a law or a decision) can be raised for the first time on appeal to the district court. Then, because § 28–32–21 indicates that the review on appeal to the Supreme Court is *in the same manner,* it has to mean that we not only determine whether the district court made a proper decision on questions first raised before it, but, when necessary, we also redetermine whether the administrator made the correct decision. For an analogous circumstance, consider the two-appeal court situation discussed in *Graver Tank & Mfg. Co. v. Linde Air Prod. Co.,* 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672 (1949), and 5A Moore's Federal Practice, ¶ 52.12, Two-Court Rule.

1. Compare with statement in *In re Sales & Use Tax Det. by St. Tax Com'r,* 225 N.W.2d 571, 578–579 (N.D.1975).

We avoided the real question in *Benson, supra,* and the real question does not appear to have been considered at all in *Snyder's Drug Stores v. North Dakota St. Bd. of Ph.,* 202 N.W.2d 140 (N.D.1972). From my research, I conclude that *Benson* and *Snyder's Drug Stores* have been the only cases before this Court where that clause in § 28–32–19, relating to raising constitutional issues, was clearly applicable. Neither case handled the issue.

Cases which appear to have reiterated the general rule that one who seeks a benefit under a statute thereby waives the privilege of challenging its constitutionality, or the general rule that issues cannot be raised for the first time on appeal, fly in the face of § 28–32–19. See, for example, *Family Center Drug v. North Dakota St. Bd. of Pharm.,* 181 N.W.2d 738 (N.D.1970); *City of Fargo v. Annexation Review Commission,* 123 N.W.2d 281 (N.D.1963); *International Printing Pressmen & Assist. U. v. Meier,* 115 N.W.2d 18 (N.D.1962); *Hazelton-Moffit Special School Dist. No. 6 v. Ward,* 107 N.W.2d 636 (N.D.1961); *Petition of Village Board of Wheatland,* 77 N.D. 194, 42 N.W.2d 321 (1950); *Ethen v. North Dakota Workmen's Compensation Bureau,* 62 N.D. 394, 244 N.W. 32 (1932); *State v. Mundy,* 53 N.D. 249, 205 N.W. 684 (1925); *Cofman v. Ousterhous,* 40 N.D. 390, 168 N.W. 826, 18 A.L.R. 219 (1918); and *Minneapolis, St. P. & Ste. M. Ry. Co. v. Nester,* 3 N.D. 480, 57 N.W. 510 (1893). Each of the cases can be distinguished in that there was no statutory provision like § 28–32–19 involved.

Even though, generally, a party may not present, in a reviewing court, a wholly new issue, there are cases in which, in order to avoid a miscarriage of justice, appellate courts have considered questions of law neither raised nor passed upon at the trial. See *Helvering v. Wood,* 309 U.S. 344, 60 S.Ct. 551, 84 L.Ed. 796 (1940), and *Hormel v. Helvering,* 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037 (1941).

In the interest of justice, even while expressing our concern about the problem of scope of review on the double appeal provided for in Chapter 28–32, we should not hide behind the confusion and keep ducking the real questions which are presented to us. I accordingly concur in Justice Vogel's conclusion that we should consider the constitutional question in this case.

I also concur in the conclusion that the judgment of the district court voiding the PSC determination should be reversed, but only because the presumption of validity of the statute has not been overcome. I would not foreclose a further attempt by Johnson, or anyone else, from bringing up some "heavy artillery"[2] to challenge the constitutionality of the statute.

SAND, Justice (dissenting).

I dissent from the opinion of Justice Vogel.

The proposed opinion either fails to give full credit to § 28–32–21, North Dakota Century Code, "Review in Supreme Court," which incorporates § 28–32–19, or seemingly misconstrues its provisions.

The appeal to the Supreme Court is on the same issues as those appealed to the district court. The decision of the district court does not change the scope of review on appeal to the Supreme Court. An appeal to the Supreme Court of an administrative agency's decision, which was first appealed to the district court, can be compared to a change of venue. The issues and the records remain the same except the review is conducted by another judicial body.

The issues raised on appeal to the district court must be limited to the record made before the administrative agency and as presented to the district court [additional evidence by stipulation notwithstanding]. The issues presented to the district court are the same issues which will be reviewed by the Supreme Court on appeal. It naturally follows that the decision of the district court does not give rise to new issues. See the well-reasoned decision in *Reserve Mining Co. v. Herbst,* 256 N.W.2d 808 (Minn. 1977), where the appeal is governed by a statute substantially the same as ours. The district court does not try the case de novo,

---

2. See *So. Valley Grain Dealers v. Bd. of Cty. Com'rs,* 257 N.W.2d 425, 434 (N.D.1977).

but rather on the record, and therefore the Supreme Court, on appeal, is not governed by the district court's decision. No deference to the trial court's decision and reasoning other than that given to another appellate court is appropriate. Under the proposed opinion the decision of the trial court would determine the issues before the Supreme Court on appeal, which is not in accordance with § 28–32–19, NDCC.

We are well aware of the criticism that it is not proper to change the rules in the middle of the game. Likewise, it is improper to change issues after the hearing has been held before the administrative agency.

Out of fairness to the administrative agency, the constitutional question should be raised at that level so as to give all parties the opportunity to present evidence which would be material to the ultimate decision of the constitutional question.

The fact that neither party on appeal to the district court questioned or challenged the propriety of raising the issue of the constitutionality of a statute which was not raised or disclosed in the record of the administrative hearing should not be controlling. Jurisdiction cannot be conferred by consent or agreement. Neither can jurisdiction be acquired through silence. Similarly, the constitutionality of a statute is not properly before the court merely because the parties may have agreed to submit the constitutionality of the statute on appeal. A challenge of the constitutionality of a basic statute should not be permitted on appeal unless it was actually raised at the hearing before the administrative agency. Alternative pleadings, and even inconsistent alternative pleadings, have been permitted and are recognized. Consequently, this should not be a problem at the administrative hearing level.

The opinion made reference to *Family Center Drug v. North Dakota State Board of Pharmacy,* 181 N.W.2d 738 (N.D.1970), wherein the court said:

"It is our view in support of that conclusion that if this constitutional issue is to be considered, it should be considered only after it has been adequately and properly briefed by both sides and after it

has been submitted in the first instance to the *trial court* for its determination." 181 N.W.2d at 746. [Emphasis added.] The reference to "the trial court" obviously must have meant "trial level," or the administrative agency, otherwise it would not fit the situation under discussion because the court had under consideration an appeal from an administrative agency. The same result was reached in *Benson, infra.*

On the scope of and procedure on appeal from determination of an administrative agency, which apply to both the district court and this court, § 28–32–19, NDCC, in part provides as follows:

"After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:

1. The decision or determination is not in accordance with the law.

2. The decision is in violation of the constitutional rights of the appellant."

Neither of these provisions, without straining, are broad enough to cover the constitutionality of a basic statute. The term, "not in accordance with law," obviously must refer to the law administered by the agency and does not imply a constitutional question. Subsection (2) refers to the decision and not to the basic statute which is being administered by the administrative agency. I construe this subsection to have reference to proceedings leading up to the decision or to contents of the decision which violate the constitutional rights of the appellant, as distinguished from the constitutionality of a basic statute which is administered by the administrative agency.

In *Benson v. North Dakota Workmen's Compensation Bureau,* 250 N.W.2d 249, 250–251 (N.D.1977), we said:

". . . while Section 65–10–01, NDCC, of the Workmen's Compensation Act provides for appeals to the district court from the Bureau's decision, the appealable issues under the Act do not include the constitutionality of the Act itself. . . . The issue of the constitutionality of the agricultural exclusion was not raised before the Workmen's Compensation Bureau, and therefore it cannot

be a part of that agency's record filed with the district court on appeal."

Allowing a challenge on the constitutionality of a basic statute for the first time on appeal from an administrative agency's decision as proposed by the majority opinion would in effect give a greater standing and recognition to administrative agencies' procedures than to procedures in the district court from which an appeal is taken to this court. The court has repeatedly held that constitutional questions not heard in the trial court will not be heard on appeal. In *Odegaard v. Craig*, 171 N.W.2d 133 (N.D. 1969), this Court said the rule is elementary.

If the constitutionality of a statute should be allowed to be raised for the first time on appeal, then the Legislature should so provide by amending § 28–32–19, NDCC, or in the alternative the Legislature should authorize and direct the administrative agencies to consider a constitutional question and render a decision thereon.

For the foregoing reasons, I respectfully dissent from the majority opinion.

PAULSON, J., concurs.